Ramsey v. Ramsey.

No. 14,013.

RAMSEY v. RAMSEY.

PARENT AND CHILD.—*Husband and Wife.—Divorce.—Children.—Custody.— Obligation of Support.*—After a decree of divorce, either with or without an order for the custody of the children, there is no implied obligation on the part of a father to pay for support voluntarily furnished by the mother to the children while she asserts and maintains the right to their custody and society, unless the father has in some way manifested his purpose to abandon them, or has refused to take them into his custody and render them a proper support.

From the Posey Circuit Court.

*E. D. Owen* and *S. D. McReynolds*, for appellant.

*E. M. Spencer, A. P. Hovey* and *G. V. Menzies*, for appellee.

MITCHELL, C. J.—The judgment from which this appeal is prosecuted was entered against the plaintiff below upon substantially the following facts, which appear in the pleadings : Margaret Ramsey, having been theretofore lawfully joined in marriage with John L..Ramsey, obtained a divorce from him at the March term of the Posey Circuit Court, in 1878. She was pregnant at the time with a child, begotten by her husband in wedlock, which was born shortly after the decree dissolving her marriage with the defendant was pronounced. As a part of the decree, the wife was awarded $300 as alimony ; but, notwithstanding the fact that her pregnancy was averred in the complaint for divorce, there was no order concerning the future custody or support of the expected child. Living apart from her former husband, and possessed of no means of support except her earnings, the divorced wife assumed the custody, and furnished the necessary support for the child, without any request or promise from the father, who was possessed of sufficient means for its support and education. Having thus supported the child

until it was nine years old, she instituted this suit against the father to recover for the maintenance and support of his child.

The question is whether, upon the facts stated, a recovery should have been allowed.

The argument in favor of reversal is predicated upon the proposition " that a father is bound for the necessaries furnished his minor child, and is bound to whosoever shall keep and maintain his child during the first years of life, when it is helpless to provide for itself." As sustaining this proposition, the following decisions are relied on : *Haase* v. *Roehrscheid*, 6 Ind. 66 ; *Wallace* v. *Ellis*, 42 Ind. 582 ; *Kinsey* v *State, ex rel.*, 98 Ind. 351.

Two of the cases cited hold, in effect, that a father who is guardian of his minor child will not be allowed to assert a claim against the estate of his ward for its support, unless it is affirmatively shown that he was unable to furnish suitable support and education out of his own private means. As a reason for the ruling in those cases it is said that, by the common law, it is made the duty of parents to support their minor children, at least while they are incapable of supporting themselves. The correctness of the rulings in the cases cited can not be doubted. In the other case nothing more is decided than that a father, who is ready, able and willing to support his minor children at home, can not be held liable to another, who, without his assent, supports them abroad. This decision affords scant support to the appellant's position. While it is true, beyond any question, that the common law enjoins upon parents the duty of protecting, educating, and maintaining their children, it is also true that in the absence of statutes the common law never afforded any means of enforcing this obligation. In the language of Lord Eldon, in *Wellesley* v. *Duke of Beaufort*, 2 Russ. 1, 23 : " The courts of law can enforce the. rights of the father, but they are not equal to the office of enforcing the duties of the father." The duty of the father to protect, educate, and

Ramsey v. Ramsey.

support his tender infant child, for whose being he is responsible, is not only a plain precept of universal law and natural justice, but is enjoined by the positive teachings of the Christian religion. /However clear and imperative the duty, or sacred the obligation, of parental support, it is open to serious consideration whether it does not fall within that class of imperfect obligations, or moral duties, the enforcement of which, according to the common law, it was deemed wiser to leave to the impulses of natural affection rather than that it should be committed to unrestrained regulation in the courts. The delicate parental duty which requires of a child submission to reasonable restraint, and demands habits of propriety, obedience, and conformity to domestic discipline, may induce a minor to abandon his father's home rather than submit to what may seem to the parents proper discipline and necessary restraints of the household. It would be intolerable if any one who should choose to furnish a minor necessaries, under all circumstances, could compel the father to answer to a court or jury concerning the propriety of the family discipline. If this were allowed, a child impatient of parental authority might be incited to set at naught all reasonable domestic control by holding over his father's head the alternative of allowing him his way at home, or of paying for his support abroad. Accordingly, it has been said no one shall take it " upon him to dictate to a parent what clothing the child shall wear, at what time they shall be purchased, or of whom. All that must be left to the discretion of the father or mother." *Bainbridge* v. *Pickering*, 2 W. Black. 1325.

It is therefore the settled rule of law in England, as well as in this country, that, however derelict a father may have been in the discharge of his parental duty, he is under no legal obligation, in the absence of statutory enactment, to remunerate one who may have furnished necessaries, or afforded relief to his minor child, unless either an express promise to pay, or circumstances from which such a promise

may be implied can be shown. *Gotts* v. *Clark,* 78 Ill. 229 ; *McMillen* v. *Lee,* 78 Ill. 443 ; *Freeman* v. *Robinson,* 38 N. J. L. 383 ; *Hunt* v. *Thompson,* 3 Scam. 179 ; *Gordon* v. *Potter,* 17 Vt. 348 ; *Varney* v. *Young,* 11 Vt. 258 ; *French* v. *Benton,* 44 N. H. 28 ; *Townsend* v. *Burnham,* 33 N. H. 270 ; *Raymond* v. *Loyl,* 10 Barb. 483 ; *Blackburn* v. *Mackey,* 1 C. & P. 1. See Schouler Dom. Rel., section 241, and notes, and Tyler Infancy, sections 190, 191.

Thus, in *Kelley* v. *Davis,* 49 N. H. 176, where a father had been guilty of a palpable omission of duty in turning his son adrift upon the world, with little education or ability to take care of himself, it was held, in an elaborate opinion in which the authorities were fully reviewed, that the father was not liable to one who had furnished him with necessaries, in the absence of a contract, express or implied. In that case the court deduced the conclusion, "That a parent can not be charged for necessaries furnished by a stranger for his minor child, except upon a promise to pay for them ; and that such promise is not to be implied from a mere moral obligation ; * * but the omission of duty from which a jury may find a promise by implication of law must be a legal duty, capable of enforcement by process of law." The further conclusion was deduced, that it would be a question for the jury in each case, taking into consideration all the circumstances connected with the parent's neglect, as indicating his intentions, views and purposes with regard to the wants of the child, whether or not the facts were sufficient to warrant the finding of a promise, express or implied. Quoting from Chitty, this court said, in *Hollingsworth* v. *Swedenborg,* 49 Ind. 378 : " Though independently of an express contract, or one implied from particular facts, a father can not be sued for the price of necessaries provided for his infant son, yet very slight circumstances will justify a jury in finding a contract on his part."

So, in *Shelton* v. *Springett,* 20 Eng. Law. & Eq. 281, it was held that a father is not liable on a contract made by his

minor child, even for necessaries furnished, unless an actual authority be proved, or the circumstances be sufficient to imply one.

In *Mortimere* v. *Wright*, 6 M. & W. 482, Lord ABINGER, C. B., declared that, " In point of law, a father who gives no authority, and enters into no contract, is no more liable for goods supplied to his son, than a brother, or an uncle, or a mere stranger would be," and he said further, that "the mere moral obligation on the father to maintain his child affords no inference of a legal promise to pay his debts." On the other hand, it has sometimes been said, where a parent fails to discharge the natural obligation resting upon him, by neglecting to provide necessaries for his infant children, that any other person who supplies them will be deemed to have conferred a benefit upon the delinquent parent, for which the law raises an implied promise on his part to make compensation." *Van Valkinburgh* v. *Watson*, 13 Johns. 480 ; *Reynolds* v. *Sweetser*, 15 Gray, 78.

While we should hesitate to declare that a father is not in any sense under a legal, as well as a moral, obligation, to nurture and maintain his minor child during the tender years of infancy and helplessness, we do give full recognition to the rule which lies at the foundation of all the cases, that the right of a third person to recover, who has discharged the obligation of the father, and supplied his offspring with necessaries which he neglected to furnish, must, in every instance, be predicated upon a contract express or implied.    *White* v. *Mann*, 110 Ind. 74 ; *Horn* v. *Eberhart*, 17 Ind. 118 ; *Wiggins* v. *Keizer*, 6 Ind. 252 ; Schouler Dom. Rel., section 241.

It would be futile, as well as hurtful, to attempt, by any general statement, to lay down a rule, or otherwise describe the circumstances, under which the law would imply a promise on the part of a father to pay for necessaries supplied by another to his minor child.   Surely it would be safe, on the one hand, to say if a father should purposely abandon his child, or cast it out helpless upon the world, under such cir-

cumstances that but for the intervention of another the life
or health of the infant would be imperilled, the parent would
not be heard to say that he did not come under an implied
obligation to pay for doing that which it was his duty to do.
On the other hand, if a minor child, who had reached years
of discretion, should abandon the paternal roof, even though
it were with the consent of his parents, in order to escape
domestic discipline or parental restraint, it could not reason-.
ably be inferred that he carried with him by legal implica-
tion the right to pledge his father's credit for support. *Weeks*
v. *Merrow,* 40 Maine, 151 ; *Angel* v. *McLellan,* 16 Mass. 28.

Slight evidence may sometimes warrant the inference that
a contract for the infant's necessaries is sanctioned by the
father, and the evidence of a contract may grow out of an
infinite variety of circumstances.

A relation, which the law recognizes as contractual, may
arise between parties in three ways :   (1) The terms of the
agreement may have been uttered, avowed, or expressed,
at the time it was made ; in which case an express contract
results.   (2) Circumstances may have arisen, or acts may
have been done which, according to the dictates of reason
and justice, and the ordinary course of dealing, or the com-
mon understanding of men, show a mutual intention to con-
tract ; in which case an implied contract arises.   (3) There
may have been no intention to contract at all, and yet one
may have come under a legal duty to another of such a char-
acter that the law precludes him from asserting that he did
not agree to perform it, and thus, by a fiction of law, a con-
tract results by construction, or implication. *Hertzog* v.
*Hertzog,* 29 Pa. St. 465.

Implied or constructive contracts, of this latter class, are
similar to the constructive trusts of courts of equity.   They
arise out of a state of facts from which the law alone, con-
trary to the intention of the parties, produces the obligation
by compulsion, or " by force of natural equity." *People* v.
*Speir,* 77 N. Y. 144 (151) ; *Wright* v. *Moody,* 116 Ind. 175 ;

*Day* v. *Caton*, 119 Mass. 513 ; Add. Cont. 23 ; 3 Am. and Eng. Encyc. of Law, 860.

It is, of course, plain enough that there was no express contract, in the present case, to pay for the support of the child. It seems equally plain, from all the circumstances, that there was no mutual intention on the part of the father and mother that the latter should be compensated for the support of the child. When the marital relation was dissolved, the mother, by the decree of nature, was the necessary custodian of the child, and it was then certain that she must remain its custodian until it should arrive at an age when maternal care was no longer indispensable. Possibly if she had offered then, or at any subsequent time, to surrender the child to the custody of the father, and he had refused to accept it, the law might have implied a promise to pay for its future support. The mother chose, however, to indulge the better instincts of her nature, and keep her child. While she retains the custody and society of the child, unless she does so in consequence of the refusal of the father, the law will not imply a mutual intention to make or receive compensation for its support.

The right to the custody and services of the child, and the obligation to support and educate, are reciprocal rights and obligations, unless otherwise fixed by judicial decree. *Husband* v. *Husband*, 67 Ind. 583 ; *Johnson* v. *Onsted*, 42 N.W. Rep. 62 ; Schouler Dom. Rel. 237 ; Bishop Mar. and Div. section 557.

It does not appear that the husband was absent from the State, or neighborhood in which the mother and child lived, or that he refused, or would have been permitted voluntarily to take the custody and support of the child. All that appears is that the mother voluntarily retained the custody and maintained and supported it without let or hindrance, and without any request from the father. Where a parent supports a child, or a child a parent, the law refers the motive which induced the support to the relationship and af-

fection consequent thereon, and will not imply a promise to pay, or infer a mutual intention to make or receive compensation. *Wright* v. *McLarinan*, 92 Ind. 103 ; *Davis* v. *Davis*, 85 Ind. 157 ; *Fitler* v. *Fitler*, 33 Pa. St. 50 ; *Fross's Appeal*, 105 Pa. St. 258.

Services which are intended to be gratuitous at the time they are rendered can not afterwards be used as the basis of an implied promise to pay for them. *Potter* v. *Carpenter*, 76 N. Y. 157 ; *St. Joseph's Orphan Society* v. *Wolpert*, 80 Ky. 86.

Ordinarily, where a wife, with an infant child, is driven from the husband's house by his cruelty or misconduct, she may pledge his credit for the child's necessaries as well as her own while he permits it to remain with her, but she can exercise no such agency after she is divorced. Schouler Dom. Rel. 345.

After a decree of divorce, either with or without an order for the custody of the children, there is no implied obligation on the part of a father to pay for support voluntarily furnished by the mother to the children while she asserts and maintains the right to their custody and society, unless the father has in some way manifested his purpose to abandon them, or has refused to take them into his custody and render them proper support. *Hancock* v. *Merrick*, 10 Cush. 41.

After a wife is divorced she occupies the same relation to her husband, in respect to her common-law right to recover for necessaries furnished his children as any other stranger. Her right to recover must rest upon a contract, express or implied. The facts in the present case fall far short of showing an implied contract. Nor do the facts make the present a case in which a contract by construction or compulsion of law arises. The child having necessarily come into the custody of the mother, after the dissolution of the marital relation, it can not be charged against the father as a wrong that he did not assert the right to separate it from its mother, as possibly he might have done. That he allowed it to remain

with her can not be regarded as an abandonment of the child. As was pertinently said in *Fitler* v. *Fitler, supra,* " When a man abandons his child and casts it upon the public, he becomes liable for its support. But it is entirely impossible to treat a child as thus cast upon the public, when the fact simply is, that the mother has deserted the father, and carried away the child and continues to support it. This is merely leaving it with her, until she chooses to restore it ; and while she keeps it on such ground, she has no claim for compensation."

It is true, in the case cited the wife was in the wrong, she having, while pregnant, deserted her husband, who afterward obtained a divorce. But the right of the wife to recover was denied, upon the ground that the husband had been guilty of no wrong to the child in leaving it with the mother in deference to her feelings, and that, hence, no contract could be inferred. Accordingly we rest our conclusion here upon the fact that the child, so far as appears, was allowed to remain with its mother out of regard for her feelings, and not in pursuance of any purpose to neglect or abandon it.

The case of *Gilley* v. *Gilley,* 79 Me. 292, has fallen under our observation. In that case a father had deserted his wife and children and left the State, and it was held, in a contest between the wife and the creditors of the husband, after a decree of divorce for desertion and want of support, no decree for custody or alimony having been made, that the mother might maintain an action against the father for the necessary support of their minor children. But the decision in that case went upon the distinct theory that the father had deserted and discarded his minor children, and in that view it is in consonance with our conclusion here. As we have seen, nothing of that kind appears in the present case, and it follows, from what has preceded, that the plaintiff had no common-law right to recover upon the facts stated. Our conclusion is not at all affected by the contention that the

right to recover for the support of the child was adjudicated in the proceeding for divorce. That adjudication settled the rights of the parties as they existed at the time, but it did not affect their rights so far as the future custody or support of the unborn child was concerned. Whatever relief the mother may be entitled to, if any, growing out of the changed circumstances since the rendition of the decree, must be sought by an application to the court for a modification of the decree in reference to the support and custody of the child. *Dubois* v. *Johnson*, 96 Ind. 6 ; 5 Am. & Eng. Encyc. of Law, 837. There was no error.

The judgment is affirmed, with costs.

Filed Dec. 10, 1889.