No. 772.

## TURNER v. FLAGG, GUARDIAN.

PLEADING.—*Guardian and Ward.—Action for Necessaries Furnished Ward.— Necessary Allegations.—Notice.*—In an action against a guardian as such, to recover for board, care, and nursing of the ward, it was alleged in the complaint, that the plaintiff, who was the grandmother of the ward, .boarded, clothed, nursed, and cared for said ward about four years, all of which were worth a sum stated, which remains due and unpaid; that the father of said ward (the mother having died) was poor and in indigent circumstances, and wholly failed, neglected, and refused, during all of said time, to furnish said ward with such necessaries; that the guardian failed to provide such necessities out of the means of the ward in his hands; that said guardian had knowledge of said necessities furnished by the plaintiff, and that plaintiff, prior to commencing the suit, demanded payment of said guardian, which was refused; that said ward had no home or care other than that furnished by plaintiff. Such complaint was insufficient on demurrer because it failed to show, in addition to the facts stated, that the failure and refusal of the father to provide such necessaries, or to pay plaintiff therefor, were brought to the notice of the guardian.

GUARDIAN AND WARD.—*Claim Against Estate.—How Presented.* –Where a person has a claim against a ward's estate, whether an infant or person of unsound mind, he may present his claim, by proper pleading, against the guardian, in the probate court having jurisdiction of the ward's ·estate and the person of the guardian, and secure such an allowance out of the ward's estate, as the court may, on the evidence, see fit, in the exercise of its sound discretion, to allow.

SAME.—*Infant.—Family Relation.—Action for Necessaries Furnished.—When Recoverable.*—An action to recover for necessaries furnished an infant is based upon the theory of some kind of contract, either express, implied, or resulting by implication of law, and where the family relation exists, whether natural or assumed, there is, in the absence of an express agreement, no liability, unless the circumstances are such that an agreement may be fairly inferred therefrom; and the mere fact that such necessities were furnished by the grandmother of an infant is not conclusive against her right to compensation therefor.

SAME.—*Power of Guardian to Bind Estate for Necessaries.—Creditor's Remedy.*—A ward's estate can not be bound by a contract for necessaries made by the guardian, but it is left to the court to determine whether the necessaries were furnished under such circumstances that the law will imply an obligation on those on whom the duty rests to pay therefor; but if the creditor relies on the terms of a contract with the guardian, he may pro-

ceed against the guardian individually, and the guardian may, to the extent such amount was a just and necessary expenditure, secure it in the way of reimbursement, out of the estate of his ward.

From the Miami Circuit Court.

*W. E. Antrim* and *J. N. Tillett*, for appellant.

*J. Mitchell*, for appellee.

DAVIS, J.—This was an action instituted by appellant against appellee in his fiduciary capacity as guardian of John L. Turner, in the Miami Circuit Court, on the 21st day of January, 1890. The substantial averments in the complaint are, that the appellee was, on the 8th day of November, 1881, duly appointed by said court as guardian of the person and property of said John L. Turner, who was then only a few months old; that said appellant, who is the grandmother of said ward, has boarded, nursed and cared for said infant child since October, 1881, to the date of the filing of the complaint; that said nursing, boarding, clothing and care so furnished by her were necessary for said ward, and were reasonably worth $52 per year, as itemized and set out in the bill of particulars, and that such amount, stated in the aggregate, is due and remains wholly unpaid; that the mother of said infant died before any of said necessaries were furnished, and that afterwards the father married again, and that the father of said ward during all of said time, both before and after his second marriage, was poor and in indigent circumstances, and wholly failed, neglected, and refused to furnish said ward with such necessaries; that in 1885 an estate belonging to said ward came into the hands of said guardian, which, after deducting expenses, amounted to $375, when the suit was commenced, and that said guardian had failed and neglected to provide for the reasonable wants of said ward within the means of the ward in his hands, and that, in fact, he had failed and neglected, during the entire time of said guardianship, to furnish anything whatever for the board-

ing, nursing, and clothing for his said ward, and that he had knowledge of the necessaries so furnished by appellant for his ward, and that, prior to the commencement of the suit, appellant demanded payment of said guardian, which was refused, and that the ward had no home or care other than that so furnished by appellant, and therefore, etc.

A demurrer was sustained to the complaint in the court below, and this ruling, by proper assignment, presents the only question for our consideration.

The questions involved are important, and merit careful consideration. We have, with care, examined all of the authorities cited and relied upon by counsel for the respective parties in this case, and, also, many others which, during the course of the investigation, have come under our observation.

We shall, in the course of this opinion, review these authorities at some length. The cases, as will be observed as we proceed, are not, in some respects, in harmony, but the conflict, as we regard it, is not so real as it at first appears.

The first question is whether such action can be maintained by appellant against appellee, in his capacity as guardian, and next, whether the facts stated are sufficient to constitute a cause of action.

*Booth* v. *Cottingham, Guar.*, 126 Ind. 431, was an action instituted in the Circuit Court, by Doctor Booth against Cottingham, as guardian of Brittenham, a person of unsound mind, to recover the value of medical services previously rendered the wife of Brittenham by him, as physician, under the employment of W. D. Carlin, who was the predecessor of Cottingham as such guardian. The court below held that Booth could not recover from Cottingham, as such guardian, the value of the services so rendered by him for the wife of Brittenham, under the employment of Carlin.

Judge Elliott, speaking for the Supreme Court in that case, said:

" The wife of an insane man is entitled to medical attention, and the physician who renders it upon the request of the guardian of the insane husband is entitled to compensation out of the estate held in trust for him by his guardian. The proposition that a sick and suffering wife shall be provided with reasonable medical attention seems so clear that we can not conceive how any one can doubt its correctness. It would be a reproach to the law if the wife of an insane man, whose estate is in the hands of a guardian, were denied the necessaries of life (and, surely, medical attention in illness is necessary), but no such reproach rests upon the law. For many years it has been settled that the wife of an insane man shall be provided with such things as are reasonably necessary to her comfort and welfare."

*Rooker* v. *Rooker, Guar.*, 60 Ind. 550, was an action instituted in the Circuit Court, by the wife of Hiram Rooker, the former guardian of four wards, against William W. Rooker, his successor, as such guardian, to recover the value of the services rendered by her at the request of her husband, as such guardian, in boarding and caring for said wards.

The court below, as in the Booth case, *supra*, rendered judgment in favor of the guardian, which, on appeal, was reversed.

Judge Howk, in that case, for the court said:

" From the facts found by the court, it is clear, we think, that the appellant's cause of action, stated in her complaint, was a just, legal and equitable claim against the estate of the appellee's wards; and we know of no legal reason why the court having jurisdiction of the estate of said wards, and of the person of the appellee as their guardian, should not have ordered and directed the appellee, as such guardian, to pay the appellant the amount found due on her said claim. It was the appellee's duty, under the statute, to pay the appellant's claim out of the

estate of his wards, in his hands, and if he failed or refused to discharge such duty, the court should have compelled him to make such payment. 2 R. S. 1876, p. 589, sec. 9."

In *Stumph, Guar.,* v. *Gœpper,* 76 Ind. 323, judgment was rendered in the Circuit Court against the guardian, on a debt contracted by a former guardian, but it was there held that such guardian could not be compelled to pay the judgment when he did not have any estate of such ward in his hands.

It was held, however, that one of the duties of the guardian was "to pay all just debts due from his wards" out of the estate in his hands, notwithstanding such debt may have been contracted by a former guardian.

In *Kinsey* v. *State, ex rel.,* 71 Ind. 32, it was held by the Supreme Court that where a guardian, who was the father of his ward, "had provided his ward with proper care, boarding, clothing, and education, by and through his contract with a third person to furnish such provision for his ward," such guardian and his sureties were entitled to a credit in a suit on the bond for the amount due to such third person, under such contract for the provisions so made and furnished to said ward.

In *Vogel* v. *Vogler,* 78 Ind. 353, it was held that an action to recover taxes on the money of his wards, which had not been assessed, was properly instituted against the guardian, and that the wards were not proper parties.

In *Ray, Rec.,* v. *McGinnis, Guar.,* 81 Ind. 451, an action on complaint against a guardian in his representative capacity to collect a debt for money borrowed in the interest of the estate was sustained.

In *Reading* v. *Wilson,* 38 N. J. Eq. 446, Thatcher was appointed guardian of Mary Wilson. There came into his hands an estate of the value of $14,000. Thatcher drew an order in favor of Reading, by which he requested Reading to furnish goods for use of his ward to the amount of $450, and directed that the same should be

charged to his account. The goods were furnished, Thatcher failed to pay therefor, became insolvent, another guardian was appointed, but the estate was "depleted by Thatcher's malfeasance to an extent exceeding $12,000." It was held that Reading could not, under such circumstances, recover against the estate in the hands of a successor of Thatcher. In the course of the opinion the court says:

"There can be no doubt that it is the duty of a guardian to maintain his ward, and to that end he may use so much of his ward's estate as may be necessary for that purpose, but this gives him no right whatever to charge or encumber his ward's estate. * * * It may be, that if a guardian should contract a debt for the benefit of his ward, and should not pay it, and the guardian, when the creditor came to ask for his debt, should have no other means of making payment but his right to be re-imbursed out of his ward's estate, that a court of equity would, instead of allowing the guardian to take the money, apply it to the payment of his creditor."

*Brown* v. *Chase*, 4 Mass. 436, was an action commenced before a justice of the peace against the guardian to recover on a contract made by the ward, a spendthrift. Without going into detail, it will suffice to say the court held that the evidence did not authorize a recovery.

In *Thacher* v. *Dinsmore*, 5 Mass. 299, the action was founded on notes executed by the defendant, who signed them as guardian for just debts of his ward. The guardian, on account of the restoration of his ward to reason, had been discharged before the commencement of the action. The maker was held liable on the notes, and the court said: "The defendant may lawfully indemnify himself out of the estate of the ward, by action for money paid to his use," etc.

In *Lewis, Guar.*, v. *Edwards*, 44 Ind. 333, the Supreme Court held that where a person is sued as guardian of mi-

nor children, on a promise to pay for the board and care of such children, the suit is upon his individual undertaking, and he may be sued in the county where he resides, though the minors may reside in another county, and his appointment as guardian was made in the county where the minors reside. See *Elson* v. *Spraker*, 100 Ind. 374; *Clark* v. *Casler, Admr.*, 1 Ind. 243; *Stevenson* v. *Bruce*, 10 Ind. 397; *Rollins* v. *Marsh*, 128 Mass. 116.

In the case last cited, the court said: " The original contract made by the defendant for the support of his ward was his own contract  *  *  *  on which he alone, if any one, was liable to the plaintiff."

In *Woodward's Appeal*, 38 Pa. St. 322, it was held that where a guardian incurs a personal liability in the interest of his ward, the orphan's court, as a court of equity, has the right, before the estate passes out of its control, so to dispose of the trust fund as to protect the guardian. See section 344, 4th ed., Schouler on Domestic Relations; *Spring* v. *Woodworth*, 2 Allen (Mass.) 206.

In *Sperry, Guar.*, v. *Fanning*, 80 Ill. 371, it was held that the guardian was personally liable. The court said: "The contract executed by the defendant does not assume to bind the ward, nor does it limit the liability of the defendant by a provision that the plaintiffs should be paid from the assets belonging to the ward, in the hands of the defendant, as guardian; in fact, the contract contains nothing pointing to the liability of any person save only the defendant himself." See *Nichols* v. *Sargent*, 125 Ill. 309.

In *Barnum* v. *Frost*, 17 Grattan 398 (Va.), Rives, Judge, speaking for the court, says: "I presume no question can be made of the jurisdiction of equity in this case. The liability of the ward's estate, if it exist at all, can only be asserted in a court of chancery. This court has, for a long course of years, reckoned among the subjects of its original jurisdiction, the care of infants and the protection of their rights and estates. Guardians are but the ministers

and agents of these courts in the administration of these functions; and are subject to their instructions, in the use of the profits or capital of the estate of their wards. While the common law admits of a suit against an infant for necessaries, it is the peculiar province of a court of equity to give relief to a creditor as against the estate of such infant. * * * Now the question arises, to whom are those who support minors, to look for the payment of their charges? Certainly not to the guardian in the absence of express contract. By virtue of his office as guardian, he incurs no personal liability to any one for their support and maintenance. But clearly the remedy for those who furnish necessaries to minors under guardianship having property, is against their estate in the hands of the guardian, and not against the guardian personally, unless he enters into a contract on which he can be held liable individually."

Judge Joynes, in a concurring opinion in the same case, says: "Indeed the law itself is the real guardian of the infant. The person who is denominated guardian is only the agent and instrument of the law, deputed, from necessity, to carry out the principles and policy established by it for the care and protection of the infant and his property. And this being so, the law will not suffer its policy to be defeated by any act or default of its instrument."

*Webster, Guar.,* v. *Wadsworth,* 44 Ind. 283, was an action instituted by the mother and stepfather of the child against his guardian, for boarding, clothing, and schooling such ward. The guardian, under order of court, filed an answer of general denial. Under the facts disclosed, the conclusion of the Supreme Court was that there was no implied promise or legal obligation to pay any part of the claim. In the language of the court: "It is manifest that the pleasure of the society of the boy was considered as equivalent for the cost of his support and education."

In *Gwaltney, Guar.*, v. *Cannon*, 31 Ind. 227, there was no averment that the necessaries were furnished at the request of the guardian, or that he failed to provide within the means in his hands, as guardian, for the reasonable wants of the wards.

*Myers* v. *State, ex rel.*, 45 Ind. 160, was an action instituted against the father, who was the guardian of his children, and the sureties on his bond to recover the estate which came into his hands as such guardian. The sureties on the bond filed an answer by way of set-off, in which they alleged that the father was poor and in indigent circumstances while he was such guardian, and that he was compelled to, and did, use the money sued for to the extent of one thousand dollars, in the education, clothing, and support of his wards, and that he wrongfully refused to claim any allowance for such support. It was held that the answer was not sufficient, because the facts in relation to the ages, physical condition and necessities of the wards were not stated, and because the amount of their estate was not given, and, "while the father may have been destitute of property, he may have been able by his labor to provide for the proper support, maintenance, and education of the relators."

In *Kinsey* v. *State, ex rel.*, 98 Ind. 351, the sureties on the bond of the father, who was the guardian of his daughter, in an action on the bond, were allowed credit for what he should have paid the child's grandmother for keeping her during the years "his means were quite limited," but the court refused to allow such credit for the years that he "had the means and was amply able to support his daughter."

In another case, an action on a guardian's bond, wherein an answer was filed by the surety, in which credit was claimed for money paid to one Ruth Ryan, for the tuition and board of the ward, the Supreme Court said: "There is no averment that the relatrix had no father or mother

at the time the guardian provided board and tuition for her; nor that they were unable or unwilling to furnish her such board and tuition; nor are facts stated showing that the ward's estate justified the expenditure charged for." *State, ex rel.,* v. *Roche, Admr.,* 91 Ind. 406.

In *Corbaley, Admr.,* v. *State, ex rel.,* 81 Ind. 62, it was held that an answer by sureties in an action on the bond of the guardian, who was the. father of the wards, was sufficient, which alleged, in substance, that they were "very young and wholly unable to earn their own support; that the father and guardian was very poor, and destitute of the means to support his children, and was unable to labor," and that he used the money of his wards in boarding, clothing, supporting and educating them. See, also, Parsons on Cont., 7th edition, vol. 1, p. 137; *Karney* v. *Vale,* 56 Ind. 542; *Ramsey* v. *Ramsey,* 121 Ind. 215; section 2521, R. S. 1881.

The rule deducible from the authorities cited, in our opinion, is that when a person has a legal and equitable claim against the estate of wards, whether infants or persons of unsound mind, he may present his claim, by proper complaint or petition against such guardian, in the Probate Court having jurisdiction of the estate of the wards and of the person of the guardian, and secure an order of such court for the payment of such amount out of the trust estate, as the court may, on the evidence, under the circumstances, see fit, in the exercise of a sound discretion, to allow.

It is true, beyond question, that it is the duty of a father who is able to labor, although in indigent circumstances, to support his helpless infant child, but, in the absence of statutes, the common law afforded no means of enforcing this obligation.

Moreover, when the parent, whether able-bodied or otherwise, where he is in indigent circumstances, in violation of such obligation, fails, neglects, and refuses to support

his infant child, the law will not necessarily imply that one who furnishes necessaries to such child is a mere volunteer, and in proper cases such persons may resort to the estate of such infant ward, in the hands of his or her guardian, for compensation.

The demurrer admits all the facts alleged in the complaint to be true, as therein stated. The ward was a helpless, motherless infant. The father was in indigent circumstances, and neglected, failed, and refused to furnish his child the necessaries of life. The guardian had an estate of $375, but failed and neglected to provide for the reasonable wants of said ward, within the means in his hands, and, in fact, failed and neglected to furnish anything whatever for said ward. The ward had no home or care, except that furnished by appellant, who furnished such necessaries with knowledge of appellee, for which she demanded payment of the guardian, which was refused.

We are confronted with the question whether on the facts and circumstances the presumption arises that appellant and said ward were, during all of that time, living together as members of one common family.

All that appears in the complaint on which to found such a presumption, is the fact that appellant is shown to be the grandmother of the ward, and that she has furnished him a home under the circumstances hereinbefore recited.

In *Glidewell* v. *Snyder*, 72 Ind. 528, a guardian filed a report, and among the items of credit for expenditures in her behalf made, claimed the following:

"Voucher No. 8, Henry Birt, $274.40."

The ward filed exceptions to the report, the second of which was as follows:

"Your petitioners would further represent that Henry Birt is the stepfather of this ward, your petitioner, Mary A. Snyder; that voucher No. 8, filed by said guardian, allows said Henry Birt two hundred and seventy-four and $\frac{40}{100}$

dollars (274.40), for boarding and clothing said ward, without right and contrary to law. Wherefore, your petitioners would ask that said guardian * * * be compelled to pay to this ward the additional sum of $274.40, which he has wrongfully allowed to said Henry Birt for boarding and clothing his said ward," etc.

A demurrer was overruled to this exception in the court below, for which ruling the cause was reversed by the Supreme Court. The court said the fact that said Birt was the stepfather of the child "was not enough to show that the allowance made by the guardian to said Birt, for her board and clothing, was 'without right and contrary to law.'"

Concerning the duties of a stepfather, the court, in another case, said:

"He is not legally bound to support" the children of his wife by a prior marriage, but if he takes them to reside with him as members of his family he can not, as a general rule, recover for necessaries furnished them. *Grossman* v. *Lauber*, 29 Ind. 618.

The language which we quote from *Glidewell* v. *Snyder*, *supra*, is as follows: "The mere fact that Birt was the stepfather was not conclusive against his rights to compensation for clothing and boarding his stepdaughter," is appropriate, as applicable to this case. *Marquess* v. *LaBaw*, 82 Ind. 550; *Davis* v. *Davis*, 85 Ind. 157.

It is true no contract is alleged, but a relation which the law recognizes as contractual may grow out of an infinite variety of circumstances.

"There may have been no intention to contract at all, and yet one may have come under a legal duty to another of such a character that the law precludes him from asserting that he did not agree to perform it, and thus, by a fiction of the law, a contract results by construction or implication. *Ramsey* v. *Ramsey*, *supra*.

An action to recover for necessaries furnished an infant, is based upon the theory of some kind of a contract, either express, implied, or resulting by construction of law, and where the family relation exists, whether natural or assumed, there is, in the absence of an express agreement, no liability, unless the circumstances are such that an agreement may be fairly inferred therefrom. *James, Admr.* v. *Gillen,* 3 Ind. App. 472.

In this case, however, the facts and circumstances set out in the complaint are not sufficient alone to justify the court in indulging the presumption, in considering the demurrer, that appellant took the helpless child and rendered the services, with the intention of making him a member of her family.

It should be borne in mind, in such cases, that the estate of the ward is not, in any instance, bound by the terms of an agreement which may have been made by the guardian. The court is to determine whether the necessaries were furnished under such circumstances that the law will imply an obligation on those on whom the duty rests to pay therefor.

In such case, whether there was an agreement with the guardian in respect to the matter in controversy, is not a vital question. The guardian is simply the minister of the law, acting under the control, and subject to the approval, of the court. If the creditor relies on the terms of a contract with the guardian, he has the remedy of proceeding against the guardian individually; then, whatever he recovers against the guardian, in such action, the guardian may, to the extent only such amount was a just and necessary expenditure, secure, in the way of reimbursement, out of the estate of his ward. But when the creditor in such case seeks compensation on a contract, either express or implied, or arising by construction, through the court, out of the estate of the ward in the hands of the guardian, he can only recover such amount as, in the exercise of a

sound discretion, meets the sanction and approval of the court. The guardian, in all such cases, has a large discretion, and is charged with grave responsibilities; and when it is sought to obtain an allowance out of the estate in his hands, it. is the duty of the court to carefully scrutinize the transaction just as it would do if the matter was presented by the guardian in a petition or report to the court.

To insure a correct result, it is incumbent on the party on whom rests the burden to bring all the essential facts in relation to the entire matter to the attention of the court.

It will be observed that there is no averment that the guardian had any knowledge that the father of said ward had refused to support his child, and that he was not paying the appellant for the support furnished by her for his child, nor is there any averment that appellant ever informed him that the father had refused to support his ward and was not paying her, nor that he knew anything about her claim until she made demand, which may be reasonably inferred was after the account accrued and just before suit was brought.

The guardian was not required to support the ward out of the estate in his hands until there was such refusal and neglect, as are averred, on the part of the father; and it occurs to us, after careful investigation and consideration, that, in order to create such implied obligation on the part of the guardian to pay for the necessaries so furnished in this case, as would warrant the court having probate jurisdiction acting as the orphan's court, in making an allowance for the payment therefor out of said estate, it should have been shown, in addition to the facts and circumstances alleged in the complaint, that the failure and refusal of the father to provide such necessaries, or to pay appellant therefor, were brought to the notice of the guardian. Then, for any necessaries which might have been furnished for the support of the child by appellant, on his neglect to make suitable provision for his ward within the means in his

hands, after such notice, she would, on the other facts stated, have been entitled to recover. Such notice would, perhaps, not be required in all cases, nor would it in all cases be sufficient to create liability.

Our conclusion is that there was no error in sustaining demurrer to complaint.

Judgment affirmed.

GAVIN concurred in the result. REINHARD, C. J., was not present.

