STANT, GUARDIAN *v.* LAMBERSON.

[No. 15,392. Filed May 5, 1937.]

*Paul Brown,* for appellant.

*Yergin & Yergin* and *Evans & Dewitt,* for appellee.

KIME, J.—Appellee, as claimant below, filed a claim against the estate of Edwin G. Stant, a minor, to recover therefrom for necessaries furnished to said minor, at his special instance and request. To this claim Omer Stant, guardian of said minor, filed a motion to make more specific, which motion was overruled. This cause was then submitted to the court for trial and the court made a finding for appellee, and rendered judgment in his favor for $356.98 and costs. Motion for new trial, assigning nine grounds or causes therefor, was overruled. This appeal followed and the only error assigned is that the court erred in overruling the motion for new trial. The only two grounds properly presented here are that the decision of the court is not sustained by sufficient evidence and that it is contrary to law.

The evidence discloses that Edwin G. Stant, aged sixteen, came to the home of his uncle, the appellee here, and said that he had had trouble with his father, Omer Stant, and that he did not intend to go back home to live. Appellee then took said minor into his home, and provided him with money, room, board and laundry for a period of ten months. At the time he left home he was living with his father, brother, stepmother and her two children on a farm in Fayette County; that during the time he lived on the farm with his father he attended high school, played on the basketball team, lived the normal life of a boy his age and circumstances, was six feet tall, in good health and weighed one hundred forty pounds. School had adjourned for the summer and on the day he left home his father wanted him to either plow or drive a tractor; that he told his father "he wasn't going to work and didn't intend to;" that his father disciplined him whereupon Edwin left home. The farm that Omer Stant was operating belonged to his children, his wife and her children; that he operated the farm on a stock and grain rent; that the family lived in a good eight-room house; that the farm was well stocked and Omer Stant owned a large amount of farm machinery, which he used in operating the farm; that he made from $900.00 to $1,200.00 a year and at the time Edwin left home his father was amply able financially to support him.

That appellant never, at any time, either directly or indirectly authorized, directed or sanctioned Edwin's staying with appellee or in any manner indicated or promised that appellee would be paid for keeping the ward, as appellant was at all times ready, able and willing to furnish his son with a good home.

There is some evidence that Edwin told appellee that he would pay him. Edwin at all times refused to return home and when appellee spoke to appellant about tak-

ing his son home appellant said he could come back as he had a good home but "all he's got to do is mind." Appellant furnished no books for Edwin to attend school with although he knew that his son attended school during the fall of 1931 and the spring of 1932.

The sole question is, Can a minor aged sixteen in good health, under guardianship, living a normal life in the home of his father, who is also his legal guardian, leave home because of parental discipline, stay away for approximately ten months and during the time he is away create a claim against his estate for maintenance and support during that period of time, when his father is amply able, financially, to support his son. A parent who is able to do so is bound to maintain and educate his child at his own expense although the child may have property of his own for that purpose. *Kinsey et al.* v. *State ex rel. Shirk et al.* (1884), 98 Ind. 351. Resort can be had to the property of a minor child for his support only after a showing that the parent has no property of his own to support the minor child, and that the parent failed and refused to support the child. *Rowe* v. *Raper* (1899), 23 Ind. App. 27, 54 N. E. 770; *Turner* v. *Flagg* (1899), 6 Ind. App. 563, 33 N. E. 1104.

The evidence clearly discloses that the appellant was father and legally appointed guardian of said minor and was amply able, financially, to support said minor, therefore, resort *can not* be had to the minor's estate for his maintenance since there is evidence as to the financial ability of the parent to support his son and there is no evidence that his father refused to support him. Because of this the claim herein, if any, is against the father personally.

There is also evidence to the effect that when the minor decided to return home the wife of appellee re-

fused to allow him to have his clothing and for ■ the first time demanded that the ward's board be paid for. Just before school started in September, 1931, appellant talked to Edwin, who testified that appellant said "It was about time for school to start and that I better come back home where I belonged. He would take me to Richmond the next day and get me some clothes, and I could go to school down there." That on reporting the conversation to the wife of appellee she said, "If you go back home I'll just charge him up with your room and board. You are not going to make a fool out of me like that, come up here and stay a little bit and leave like that." From such evidence it is clear that the board and room extended to the minor were intended to be gratuitous at the time they were rendered. Services which are intended to be gratuitous at the time they are rendered cannot afterwards be used as the basis of an implied promise to pay.

Appellee contends that an infant may bind himself for necessaries and the law implied a promise to pay from the necessity of the situation and cites as ■ authority therefor the case of *Trainer* v. *Trumbill* (1886), 141 Mass. 527, 6 N. E. 761. That case is not in point with the case here, as there an infant living in an almshouse was expecting a large sum of money and a third person took the infant from the home and supplied him with necessaries. This third person later sued to recover for such necessaries and the court there said, in answer to the contention that such necessaries furnished by the third person were not necessaries because the infant "being a pauper, and an inmate of an almshouse, was supplied with necessaries, suitable to his estate and condition, and, under the circumstances, it would have been the duty of the guardian to place him in the almshouse." "But this by no means

implies that a boy with expectation of a fortune of $10,000 should be brought up in an almshouse if any suitable person will take him, and bring him up properly, on the credit of his expectations. On the other hand, it seems to us highly proper for a parent or guardian, under such circumstances, to do what the father did in this case; leaving it for the boy's guardian to see to it that an unreasonable price is not paid. Looking to the advantage of his subsequent life, as well as to his welfare for the time being, his transfer from an almshouse to a suitable person, by whom he would be cared for and educated, would certainly be judicious; and the support and education furnished to an infant of such expectations, whose means were not presently available, fall clearly within the class of necessaries."

If the father here had cast his son, a child in arms, out helpless upon the world, and but for the intervention of another the life or health of the infant would be endangered the parent would be barred from claiming that one who took care of such infant was not entitled to pay under an implied contract. This was not the case here. In the case at bar a minor child, leading a normal life as above set out, who had reached the age of discretion but not of manhood abandoned the paternal home, in order to escape parental discipline, and went to live with appellee, an uncle. It can not be inferred from such facts that such minor carried with him, by legal implication, the right to bind his father, or in the inability of his father to pay, his own estate for necessities. *Ramsay* v. *Ramsay* (1889), 121 Ind. 215, 23 N. E. 69. The Ramsay case, *supra,* deals with the support of a child by the father after the parents were divorced but the underlying principles of that decision are strongly applicable to the facts here and there the court said (p. 217) : "The delicate parental duty which requires of a child submission to reasonable restraint, and demands

habits of propriety, obedience, and conformity to domestic discipline, may induce a minor to abandon his father's home rather than submit to what may seem to the parents proper discipline and necessary restraints of the household. It would be intolerable if anyone who should choose to furnish a minor with necessaries, under all circumstances, could compel the father to answer to a court or jury concerning the propriety of the family discipline. If this were allowed, a child impatient of parental authority might be inclined to set at naught all reasonable domestic control by holding over his father's head the alternative of allowing him his way at home, or of paying for his support abroad."

If we were to sustain the appellee here it would place the ward in a position of dictating to his natural and legal guardian whether or not he would obey the ordinary directions and discipline of his father and would further allow the ward to dictate to the parent and guardian whether or not he would remain in his own home and under the guidance of his parent and guardian. It is neither the law nor the policy of this court to create a condition whereby the ward controls his natural or legal guardian instead of the natural or legal guardian controlling the ward.

We, therefore, hold that under the uncontradicted evidence the estate of said ward is not liable for the amount of the claim and that the decision is not sustained by sufficient evidence and is contrary to law.

In the view we take of this case it will not be necessary to remand it for a new trial. The judgment is reversed with instructions to the trial court to render judgment for the appellant. *Iglehart* v. *Todd et al.* (1931), 203 Ind. 427, 178 N. E. 685.

Laymon, J. dissents.