## Com. ex rel. Wallace v. Simoes

*Frederick C. Horn,* for petitioner.
*Edward Rubin,* for respondent.

MOSS, *J.,* November 7, 1980—This action was instituted for support of three children of a prosperous medical doctor.

The children left his household. Each child was received first into the home of petitioner, and later the children each took up residence apart from one another, in the home of one of the additional petitioners. The oldest child then resumed cohabitation with her father. Hence, by stipulation, the question of the duty to support that child is removed from this case.

The important question is whether defendant, who is willing to maintain and support his other children in his own home, should be ordered to support and maintain them while they are living elsewhere of their free choice in private homes into which they have been received.

This action started as the petition of Mary D. Wallace for an order for the support of defendant's three children, Elizabeth Mary Simoes, Anthony John Simoes and Anna Camille Simoes. The issue of defendant's liability to support his daughter, Elizabeth Mary Simoes, has been amicably resolved, as aforesaid.

Later, George Dowiak and Julia Madden petitioned to join as additional petitioners. In that petition it was alleged that Anthony John Simoes lives with George Dowiak, and Anna Camille Simoes lives with Julia Madden. The court on March 21, 1980 ordered the joinder of the additional petitioners.

The evidence was adduced at hearings held on March 21, 1980, April 21, 1980 and June 2, 1980.

Elizabeth Mary Simoes is 18 years of age, Anthony Simoes is 16 years of age, and Anna Simoes is 14 years of age. Their father, defendant, is Anthony J.L. Simoes, a medical doctor specializing in surgery. Their mother, Frances Simoes, took her own life in November, 1978.

Defendant occasionally resorted to corporal punishment in disciplining his children. One time when Anthony was nine or ten years old, he accused defendant of cheating at a game of cards. Defendant slapped the boy on that occasion. One time in the summer of 1978, Anthony dropped an item of his father's possessions that was of particular value. Defendant said to his son that "If you ever do that again, I will break your fingers." On a prior occasion in 1975 when Anthony was in fifth grade and forged his mother's or father's signature on some school papers relating to his poor deportment, defendant slapped the boy in the face and gave him a bloody nose.

This son further testified that in the spring or summer of 1978, he observed defendant striking the son's sister, Anna, for some misconduct unknown to the son. He said that Anna, in years before 1978, had bruise marks on her hand from blows which defendant inflicted.

At a time when the daughter, Elizabeth Simoes was 16 years of age, she disobeyed a curfew which her father and mother had set, and defendant-father administered corporal punishment. Defendant later regretted the incident and tried to apologize to Elizabeth thereafter, but for a while she refused to speak with him.

Defendant occasionally disciplined his daughter Anna by striking her or pulling her ears when she disobeyed him or her mother.

Elizabeth Simoes testified that "after my dad beat me, I just left and went" to her maternal Aunt Mary Wallace's house. That was on August 13, 1978. Her brother and sister later made the same move. Then, because of overcrowding, after a few weeks, Elizabeth moved to the home of her Aunt, Rose Clayton et vir. at 1048 York Avenue, Lansdale, Pa. As stated hereinabove, she has since resumed cohabitation with her father. The other children, Anthony and Anna, moved to the Dowiak and Madden homes respectively, and they have not returned to their father's home.

Defendant thinks that spanking is one form of proper discipline in appropriate cases. He has inflicted this punishment infrequently, perhaps no more than ten times on Anthony since babyhood.

Defendant would like to have the two younger children live in his home. The children refuse not only to live with him; they refuse to see him.

"The right of a young child to support from its father 'is well nigh absolute'. Commonwealth ex rel. Firestone v. Firestone, [158 Pa Superior Ct. 579] p. 581." Com. v. Mexal, 201 Pa. Superior Ct. 457, 461, 193 A. 2d 680 (1963).

However, the Pennsylvania decisions indicate that the rule of absolute liability irrespective of the deprivation of the father's rights of visitation or custody may have exceptions. Com. ex rel. Chila v. Chila, 226 Pa. Superior Ct. 336, 313 A. 2d 339 (1973).

Where by no fault on the parent's part, a child who has reached an age of discretion, but not of manhood or womanhood, voluntarily abandons the parent's home so as to avoid parental discipline and restraint, the child forfeits the claim to support: Stant v. Lamberson, 103 Ind. App. 411, 8 N.E. 2d 115 (1973). "It cannot be inferred from such facts that such minor carried with him, by legal implica-

tion, the right to bind his father . . ." Stant v. Lamberson, supra, 103 Ind. App. 416, 8 N.E. 2d 117. This rule applies to cases "[w]here a minor [is] of employable age in full possession of his or her faculties. . . ." 67A C.J.S., Parent and Child, §51.

There is a dearth of case law on the precise point in Pennsylvania. However, the rationale is set forth as follows:

". . . where by no fault on the parent's part, a child 'voluntarily abandons the parent's home for the purpose of seeking its fortune in the world or to avoid parental discipline and restraint [that child] forfeits the claim to support.' 67 C.J.S. Parent and Child, §16, p. 699; Stant v. Lamberson, 103 Ind. App. 411, [8 N.E. 2d 115]; Schmit v. Campbell, 140 Wash. 376, [249 P. 487] . . .To hold otherwise would be to allow,. . . a minor . . .to deliberately flout the legitimate mandates of her father while requiring that the latter support her in her decision to place herself beyond his effective control. . . .

"[A] minor, rather than submit to what [his or] her father considers to be proper discipline, may be induced to abandon the latter's home; but in so doing, however impatient of parental authority, [he or] she cannot enlist the aid of the court in frustrating that authority, reasonably exercised, by requiring that [the] father accede to [his or] her demands and underwrite [his or] her chosen lifestyle. . . ."

". . .The father has the right, in the absence of caprice, misconduct or neglect, to require that the [child] conform to his reasonable demands. . . but in so doing, she subjects herself to her father's lawful wrath. Where, as here, [he or] she abandons [the] home, [he or ] she forfeits the right to support." Roe v. Doe, 29 N.Y. 2d 188, 193, 194, 272 N.E. 2d 567, 570 (1971). So also, in Creeley v. Creeley, 258 Mass. 460, 463, 155 N.E. 424, 425 (1927), the court declared: "If the father is willing to support his child

in his own home and the child elects to stay away without justifiable cause, the father is not liable for his support while remaining away, in the absence of any order of court."

A father's physical or mental abuse or neglect of his children may have been so severe or continuous that a court may conclude that the children reasonably and properly sought relief by escaping to the sanctuary of kind and thoughtful relatives or friends. In such case, the father continues to have an obligation to support his children: Com. ex rel. Halderman v. Halderman, 230 Pa. Superior Ct. 125, 326 A. 2d 908 (1974). The testimony in this case reveals a quick-tempered father who may have over-reacted on occasion, a father whose affection for his children is masked by a sternness that some people may consider old-fashioned and outmoded. Nevertheless, considering all the evidence, we find that the father in this case committed neither acts of such cruelty as to endanger the lives of his children nor indignities as to render their condition intolerable and their lives burdensome. In short, there was and is insufficient justification for the refusal of the two younger children to live with their father. His quick-temper and occasional employment of violence as a disciplinary measure are clear in this record. Neither of such attributes entitles him to any laurels, particularly since he is highly educated and eminently successful in his chosen profession of surgery.

The court has broad discretion to determine the amount of support to be paid for a child's education and maintenance.

A "father of sufficient means must support his child,. . .and it is no defense that . . . the child itself, has independent means." Com. ex rel. Byrne v. Byrne, 212 Pa. Superior Ct. 566, 568, 243 A. 2d 196 (1968).

The court has broad discretion. "(I)t seems equitable to take the child's earnings into consideration." Com. ex rel. Platt v. Platt, _____ Pa. Superior Ct. _____, A. 2d (_____).

The order should provide "such allowance for support as is reasonable, considering the property, income and earning capacity of the father, and the condition and station in life of the family." Com. ex rel. Arena v. Arena, 205 Pa. Superior Ct. 76, 78, 207 A. 2d 925 (1965).

Defendant's net worth is in excess of $1,000,000. His liquid assets—stocks, bonds and other investments—amount approximately to $300,000. His earned income is in excess of $100,000 annually.

Defendant's younger children have assets which can be liquidated readily, aggregating approximately as follows:

| | |
|---|---|
| Anthony, Jr. | $33,875 |
| Anna | $27,400 |

Each of the three children receives monthly Social Security payments of $258.50.

Anthony, Jr.'s annual expenses were projected, according to Mr. Dowiak, at $1,065 per month or $12,768 per year. This was grossly inflated with items such as $10 per day for use of a room in the Dowiak house plus use of the rest of the premises, and with numerous other projected items. Anthony, Jr. withdrew from LaSalle High School because of inconvenient transportation. He is in an academic course in the public school system and desires to attend college.

The expenditures for the maintenance of Anna L. Simoes are estimated by the Maddens at approximately $14,716 annually. However that impresses us as a quite exaggerated amount.

The summation of the matter is that here the sister and her own sisters have taken in the Simoes

children and furnished accommodation for them and made provisions for their comfort so that the Simoes family has been splintered and no longer functions as a unit. That may be the way the younger Simoes children want to live. That may be the kind of life which they will live. This is not a habeas corpus action, and we need express no opinion as to the decision which this court would hand down if the parties were before us on a habeas corpus petition. However, since there has been no showing that defendant is an unfit person to have custody of his children (though he may not demonstrate superior expertise in disciplining them), and since the Dowiaks and Maddens, the persons presently providing accommodations for the younger children, evidently have not made an effort to effect a reconciliation between the father and children, and since the Dowiaks and Maddens are either using their own funds or the funds of the younger Simoes children for maintenance and education of the children, and since there is no showing that the children are presently in financial suffering or in want, the court is deposed to let the parties remain in the beds they have made for themselves.

## ORDER

And now, November 7, 1980, the petition for an order of support is dismissed.