Ruth BRYANT, Appellant–Defendant,

v.

**MUTUAL HOSPITAL SERVICES, Appellee–Plaintiff.**

No. 22A01–9604–CV–141.

Court of Appeals of Indiana.

July 22, 1996.

Steven A. Gustafson, New Albany, for Appellant.

Kathryn L. Pry, Jeffersonville, for Appellee.

## OPINION

ROBERTSON, Judge.

Ruth Bryant [Mother] appeals the summary judgment entered in favor of Mutual Hospital Services [Hospital] in Hospital's action to recover compensation for medical services provided to Mother's daughter [Daughter]. The sole issue raised on appeal may be restated as:

> whether the parent of a runaway, incorrigible child may be held liable for the medical services provided to the child necessitated by the child's refusal to submit to the reasonable restraints and demands of propriety, obedience, and conformity imposed by Mother.

We reverse and remand with instructions that judgment be entered in favor of Mother.

## FACTS

The dispositive, properly designated facts are not disputed. Mother adopted her granddaughter [Daughter] who is the subject of this dispute. Daughter first ran away from Mother's home in 1989 because Mother did not approve of Daughter's boyfriend who was violent and mistreated her. The boyfriend had broken Daughter's arm. Daughter has been the subject of multiple delinquency proceedings and has had a child out of wedlock. Medicaid paid the medical expenses associated with Daughter's pregnancy and broken arm.

In July of 1992, Daughter was seventeen years-old. At the time, she was not living with Mother, but instead, had been placed in a foster home. Mother had been taking care of Daughter's child. The Probation Department became the payee of Daughter's social security benefits.

Daughter ran away from her foster home. On September 11, 1992, she was arrested and placed in the Youth Shelter. On September 15, 1992, she was hospitalized for seven days for the treatment of a venereal disease. The hospital bill came to $4,860.29. Daughter received treatment from the hospital on two more occasions for venereal-related infections. She received treatment from the hospital a fourth time for depression brought on by her deficient lifestyle.

Hospital sued Mother for the outstanding hospital bills. Both parties moved for summary judgment. The trial court entered summary judgment in favor of the hospital in the amount of approximately $5,600.00. This appeal followed.

### DECISION

Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Great Lakes Chemical Corp. v. International Surplus Lines Insurance Co.,* 638 N.E.2d 847, 849 (Ind.Ct.App.1994). Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. *Seufert v. RWB Medical Income Properties I Limited Partnership,* 649 N.E.2d 1070, 1072 (Ind.Ct.App. 1995). Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings, but must set forth specific facts, using supporting materials contemplated the rule, showing there is a genuine issue for trial. *Liberty Mutual Insurance Company v. Metzler,* 586 N.E.2d 897, 900 (Ind.Ct.App.1992), *trans. denied.* If the opposing party fails to meet this burden, summary judgment may be granted. *Id.*

In reviewing a motion for summary judgment, this court must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *Cloverleaf Apartments, Inc. v. Town of Eaton,* 641 N.E.2d 665, 667 (Ind.Ct.App.1994). A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred. *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). Nevertheless, when the evidence is undisputed, as in the case at bar, and there are no unresolved facts to be determined, it is appropriate for the appellate court to determine as a matter of law that summary judgment was rendered for the wrong party. *Indiana Department of Insurance v. Zenith Re–Insurance Company,* 596 N.E.2d 228, 229 (Ind.1992). In such cases, we may reverse and remand with instructions that summary judgment be entered in favor of the other party. *Motorists Mutual Insurance Company v. Morris,* 654 N.E.2d 861, 864 (Ind.Ct.App.1995).

Under certain circumstances, the law will imply a promise by a parent to pay for necessaries furnished to her minor child. *Wagoner v. Joe Mater and Associates, Inc.,* 461 N.E.2d 706, 708 (Ind.Ct.App.1984). The policy behind this law is to encourage a neglectful parent to assume responsibility for the welfare of his child. *Id.* Accordingly, where a parent is ready and willing to make suitable provision for the child, he will not be liable for necessaries furnished by others without his consent. *Id.* In *Wagoner,* we held that the parent was not guilty of the type of neglect required in order for a provider of necessaries to maintain an action for payment against a parent. *Id.*

When a minor child, who 1) has been adequately supported and reared by his parent, 2) who reaches the age of discretion, but not of adulthood, 3) abandons the parent's home in order to escape parental discipline, he does not carry with him, by legal implication, the right to bind the parent for his necessities. *Stant v. Lamberson,* 103 Ind.

App. 411, 8 N.E.2d 115, 117 (1937).[1] The *Stant* court held:

> 'The delicate parental duty which requires of a child submission to reasonable restraint, and demands habits of propriety, obedience, and conformity to domestic discipline, may induce a minor to abandon his [parent's] home, rather than submit to what may seem to the parents proper discipline, and necessary restraints of the household. It would be intolerable if any one who should choose to furnish a minor necessaries, under all circumstances, could compel the [parent] to answer to a court or jury concerning the propriety of the family discipline. If this were allowed, a child impatient of parental authority might be incited to set at naught all reasonable domestic control by holding over his [parent's] head the alternative of allowing him his way at home, or of paying for his support abroad.'

\*        \*        \*        \*        \*        \*

It is neither the law nor the policy of this court to create a condition whereby the ward controls his natural or legal guardian instead of the natural or legal guardian controlling the ward.

We, therefore, hold that under the uncontradicted evidence ... the decision is not sustained by sufficient evidence and is contrary to law.

In the view we take of this case, it will not be necessary to remand it for a new trial. The judgment is reversed with instruction to the trial court to render judgment for the [parent].

8 N.E.2d at 117 (quote from *Ramsey v. Ramsey*, 121 Ind. 215, 23 N.E. 69, 70 (1889).)

In the present case, there is no designated evidence to indicate that Mother was guilty of the type of neglect required in order for a provider of necessaries to maintain an action for payment against a parent. *See Wagoner*, 461 N.E.2d at 708. The Hospital made no attempt to rebut Mother's designated evidence which showed that Daughter had abandoned Mother's home to escape parental discipline and that the medical services provided to Daughter had been necessary due to Daughter's refusal to submit to the reasonable restraints imposed by Mother in her home.

Under the authority set out above, Mother is not liable for the Hospital's provision of medical services to Daughter. Therefore, we reverse and remand with instructions that judgment be entered in favor of Mother.

Judgment reversed.

NAJAM, J., concurs.

BAKER, J., concurs in result with separate opinion.

BAKER, Judge, concurring in result.

I am compelled by the decisions of *Ramsey* and *Stant* to concur in the majority decision.[2] However, I write to express my concerns with the exception set forth by those cases.

The general rule requiring a parent to pay for a child's necessaries was designed to ensure that providers of medical services could treat a child with the expectation that they would be compensated by the child's parents. The exception in *Ramsey* and *Stant*, which permits a parent to escape liability upon a showing that the child has been provided for, is not of the age of majority and left home to avoid parental discipline, is not apparent to the providers at the time they render services to the child. In fact, the providers must institute judicial proceedings against the parent for payment before the providers will know whether the exception is

1. *Stant* was discussed in Annot. *Parent's Obligation to Support Unmarried Minor Child Who Refuses to Live with Parent*, 98 A.L.R.3d 334 at 339. Our review of the annotation reveals that, while Indiana is not alone in this area of the law, the *Stant/Ramsey* rationale is unique in its approach regarding the responsibilities of children and the maintenance of the integrity of the family unit. *See also McKay v. McKay*, 644 N.E.2d 164 (Ind.Ct.App.1994).

2. Bryant is distinguishable from *St. Mary's Medical Center, Inc. v. Bromm*, 661 N.E.2d 836 (Ind. Ct.App.1996), in which we determined that a non-custodial parent was not entitled to escape liability for his child's medical expenses because the child still resided with her mother, the custodial parent.

applicable. The exception, therefore, completely ignores the reason for the general rule.

Additionally, I note the difficulty facing non-custodial parents when a provider seeks payment for necessaries. In order to avoid liability, a non-custodial parent must demonstrate that the custodial parent adequately supported and reared the child and that the child left home in order to escape parental discipline. However, the non-custodial parent, who does not live in the home with the child, is not in the best position to make such a showing. Further, the exception does not address the fact that the non-custodial parent has no physical control over his child's behavior, yet, he is held liable for his child's expenses.

For these reasons, I believe the antiquated exception is inadequate to address the needs of today's society but I feel compelled by ancient precedent from our Supreme Court to concur.