CASE 19—EQUITY—FEBRUARY 16, 1882.

# St. Joseph's Orphan Society v. Wolpert, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The petition attempts to set forth four distinct causes of action against as many different parties defendant, no one being interested in the actions against the others, and therefore the court properly sustained the motion to require appellant to elect.

2. Having received an orphan to care for and educate him, with the express avowal that nothing is to be charged therefor, appellant discovering that, by the act of the government, a pension is granted the orphan, will not be permitted to revoke its gratuity, and collect that which was openly a charity.

3. The charity was executed and cannot be revoked.

ELLIOTT & HEMMINGRAY FOR APPELLANT.

Brief withdrawn.

BYRON BACON FOR APPELLEES.

The court properly compelled appellant to elect as to which cause of action it would prosecute. The petition purports to state a cause of action against several persons, when in fact four distinct suits. must be brought. Appellant does not keep a "tavern," a house of public or private entertainment, and it did not make any agreement for compensation. The orphan was taken as a matter of charity, and no recovery can be had. (Art. 3, chap. 106, Gen. Stat.)

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

The appellant, a charitable institution for the rearing, maintaining, and educating of orphan children, brought this action against John Schulten, as guardian of Frank, George, Catherine, and John Wolpert, and against each of said infants in their individual capacity, for the value of raising, taking care of, and educating them.

The petition, stripped of its formal parts, substantially alleges that the infants named were supposed by appellant and their guardian to be penniless, and that the appellant received, cared for, and educated them as persons who have no property or means, and that such persons were so received and cared for without charge in the institution; but that the by-laws authorized by its charter provides that the guardian of orphans who have property, means, or estate might contract with appellant's board of trustees, and agree upon the conditions of their admission; and that appellant has recently discovered that the infant appellees did have some money, which was received from their mother's estate, and as a pension, by reason of the military service of their father in the United States army.

Whether the court below was correct in sustaining appellees' motion to compel appellant to elect which cause of action it would prosecute, is the first assigned error for consideration.

This assignment is not sustained by the argument that this character of joint action will avoid a multiplicity of suits, and is therefore authorized by the rules of equity, because section 83, Civil Code, fixes the rule and prescribes what causes of action may be joined; and by its express letter only such actions as *affect* all the parties to the action may be joined.

The petition, if it stated any, sets forth four distinct causes of action against as many different parties, none of whom is interested in or can be affected by any cause of action alleged against any one of the others.

While each has the same guardian, he represents their interest in as distinct a capacity officially as if each had a different person as guardian.

The debt or liability of one cannot be recovered from or discharged by the property of another.

The motion to elect was therefore properly sustained.

After the appellant, under protest, elected to prosecute its action against the guardian of John Wolpert, the latter demurred, and the court sustained the demurrer, and that ruling forms the next question to be determined.

It will be noticed that the appellant does not allege any promise or agreement with the guardian or the infants, either for board, care, or education, and having, from charitable motives, taken, raised, and educated them without intending to charge therefor, as it alleges, it cannot, by reason of this express and executed gratuity, recover on an implied assumpsit raised by law, unless the alleged mistake in the condition of these orphans will authorize a revocation of its consent, and impose upon them a liability for what it voluntarily did. It is not alleged that the guardian intentionally or fraudulently suppressed the knowledge from appellant of the existence of the small sum which they received by distribution from their mother's estate or of the pension; and a close analysis of the whole case presents the question, whether a charitable institution, incorporated for the purpose, shall be permitted to receive, care for, and educate orphans, with the express understanding that nothing is to be charged therefor, and when it is discovered that such

orphans have received by the misfortunes of war, and the charity of the government, a pension for the purpose of subsistence, which is exempt from attachment, levy, or seizure, revoke its gratuity, and share with the beneficiaries that charity which they have received from another source.

We do not think it can be allowed this privilege of recantation, because its charter and by-laws authorized it to contract for compensation; yet it failed to arm itself with an agreement therefor, and no deception is alleged to have been practiced to prevent this exaction.

And it has been held too often to admit of doubt or discussion, that an executed gift or gratuity cannot be revoked by the donor, no matter what may have been the condition of the donee, or what charities he shall receive, or property acquire in the future, unless the donation or gratuity were the result of fraud or mistake in its execution.

And there is no reason why an executed gift of personal property shall not be revoked that does not sustain the irrevocability of gratuitous labor, care, board, or education after completion.

One is no more the executed donation of value than the other, and the same principle of law is equally applicable to both.

The creation of the appellant was for charitable and benevolent purposes, and the undertaking of its holy mission presupposes that its labor of love is to be done without money and without price, and unless a special agreement, which seems to have been authorized by its charter, in view of the gratuitous nature of the office of this institution, were made for compensation, we do not think it can recover for board, care, and education of orphans whose control it

has sought with the avowed purpose of bestowing charity upon them.

There was no mistake in the execution of these charitable donations, which do not partake of the nature of a contract to the same degree that ordinary gifts do; but the objects of this charity seem to have been less needy than appellant supposed, and this is all we are authorized to infer from the allegations of the petition.

Under what is known as the hospitality act, an uninvited guest cannot be held liable on an implied assumpsit, and certainly infants, who are invited generally and specially to a charitable institution, cannot be held bound for the charity they receive without an express promise to pay, simply because they happened to have and receive property, which was unknown to the managers of the institution until after the performance of the charity.

Were this otherwise, this noble charity would be converted into a sort of house of private entertainment, to which obligations of indebtedness might be contracted unawares by orphans and guardians, and those who received its assistance free would become debtors therefor by the unexpected development of ownership hitherto unknown to the institution.

The demurrer, in our opinion, was properly sustained. Judgment affirmed.