(Muskingum County, Common Pleas.)

DIRECTORS OF INFIRMARY v. MER-
KLE AND MERKLE, AS GUARD-
IAN.

---

Implied contract of guardian to pay for support of his ward—Where a guardian, wife of her insane husband, had knowledge

that her ward was taken by warrant of the probate judge to the county infirmary, upon his discharge from the State insane asylum (with no homicidal or suicidal propensities), and consented to such disposition of her ward, and he remained and was supported there for a series of years, with her knowledge and consent, he, not being a pauper, but with abundant means in her hands, as such guardian to pay for his support,

*Held,* That there was an implied contract on the part of the guardian to pay what the support and maintenance was reasonably worth.

---

MUNSON, J.

This action is before the court on a general demurrer to the petition.

The petition alleges that in 1874, Edmund Merkle was adjudged insane by the probate court of Muskingum county, and upon warrant duly issued by that court was admitted to the State asylum.

That in 1876 the defendant, Mary Merkle, wife of Edmund Merkle, was duly appointed and qualified as his guardian.

That July 21, 1885, Edmund Merkle was discharged from the Central Insane Asylum and was, upon warrant, issued by the probate court, transferred form the State asylum to the county infirmary of Muskingum county, and received there July 27, 1885, as an insane person having no homicidal or suicidal propensities.

That the defendant had full knowledge of the discharge of her ward from the State aslyum, and that it was with her full knowledge and consent, as guardian, that he was transferred to and received into the infirmary.

That he has been continuously since then insane, and has been supported, maintained and cared for by the board of directors, the plaintiff, at the expense of the county, being for a period of ten years and six months, although during all that time abundantly able to pay for his support, mantenance and care, and during all that time the defendant, guardian, had in her possession, and still has, abundant means, as guardian, to maintain and care for her insane husband and ward, and it was with her full knowledge and consent, as guardian, that her husband and ward has been during all the time mentioned, supported, maintained and cared for by the board of infirmary directors, the plaintiff.

Then follows the allegation that the support and maintenance is reasonably worth $130 a year, or $1365 in all, for the ten years; that the payment was demanded of the defendant, guardian, and she refused to pay.

Prayer for judgment.

To this petition, as I have said, there is a general demurrer.

Section 8092 2, R. S., provides * * * "no insane person shall be kept in the infirmary * * * unless regularly committed thereto as provided by law."

Section 705 provides * * * "the relatives of any person charged with insanity, or who is found to be insane, shall in all cases have the right to take charge of and keep such insane person charged with insanity, if they desire to do so ; and in such case the probate judge, before whom the inquest has been held, shall deliver such insane person to them."

Section 971 provides * * * "the infirmary directors shall also receive and provide for the safe keeping, supporting and treatment of lunatics. * * * in their county who, by their guardians and friends, may apply for admission as pay patients under such rules and regulations as the directors prescribe."

The allegation is that it was with her full knowledge and consent that he was transferred and received in the infirmary.

"Consent" is an agreement of mind—approval.

She knew it and approved ; but consent means more than that. It is a synonym of assent, or acquiescence, concurrence, agreement of harmony of opinion or sentiment.

The theory of the law in regard to acts done and contracts made by parties affecting their rights is, that in all there must be a free and full consent to bind the parties.

When the defendant's husband and ward was discharged from the State asylum as incurable, it became her duty as his guardian to maintain and support and care for him. This she might do at her own home or at the infirmary ; there was no law that could compel her to relinquish such care and maintenance to the board of infirmary directors ; she had a right to demand the custody of her ward. She was her husband's relative in such sense as would give her the right to take charge of and keep him, and under the section of the statute I have alluded to, section 705, the probate court was bound to have delivered him into her charge.

Under these circumstances she *consented* that the directors should take him, provide for his safe keeping, support and treatment, for pay ; in no other way could they take her husband and ward ; he was not a pauper ; he was not dangerous : he had no homicidal or suicidal propensities ; hence the law could not have confined him against her will.

The other provision of section 971 for the admission of lunatics, etc. who are or may become a charge upon their county, and, therefore, be kept in the infirmary, and cared for as are the poor of the county, did not apply to his case. He could only be admitted as a pay patient, and no warrant of the probate court could admit him against her wish to keep him and care for him herself.

Now. under these circumstances, having been admitted with her knowledge and consent, was there any implied promise on her part, as guardian. to pay? Clearly, if she could not have prevented it, there would be no implied promise to pay ; but we have seen that she could prevent it ; she knew—

she was bound to know, because it was the law relating to her ward and husband—that he could only go into that infirmary as an insane person, and pay.

Knowing this, she consented that he go there, that he remain there. and be maintained there. There was sufficient consideration for contract, for an implied contract, to pay; she gave up her right to his custody and care; she was relieved of the burden of his support and maintenance; the county took the burden from her for pay. Every implied contract rests upon the particular fact and circumstances of the case.

In the case of Linn v. Ross, 10 Ohio 414, Wood, J., says: "An implied agreement is where the terms of the contract are not expressed between the contracting parties; but the obligation of natural justice by reason of some legal liability impose the payment of money or the performance of some duty, and raise a promise to that effect"

In the case of Harrison v. Gotlieb, 3 C. C. Rep., 191, the court held that, "where services have been rendered by one person to another with his knowledge, but without any express contract between them, this of itself is not sufficient to entitle the person so rendering the service to recover therefor as on the implied contract. Implied contracts are those which reason and justice dictate, and which therefore the law presumes every man undertakes to perform." It should, therefore, further appear, from the circumstances of the case, that the services rendered were such as people. as a rule, expect to be paid for; and then if there are no special circumstances to show that they were rendered gratuitously, or that the person availing himself of them honestly believed and had reason to believe that they were so rendered, the promise to pay the value therefor may reasonably be inferred."

Bearing in mind that there was no charity in this transaction, no law permitting the exercise of charity on the part of the county through its board of directors in behalf of this insane person; bearing in mind that there was no duty on the directors to maintain Edmund Merkle except for pay, and that the defendant had knowledge of this, and that they were maintaining her husband and ward, and that they could only do it for pay; then bearing in mind that it is alleged that she consened to his maintenance, I think that the agreement on her part to pay must be presumed.

As guardian, she must give support directly or indirectly. She consented that her duty in this respect be performed by another, and I think a promise to pay will in justice be presumed.

So far as this transaction is concerned, it seems not unlike the defendant, guardian, having knowledge that her ward was receiving board at a hotel, she would know, and the hotel keeper would know that she knew, because she would be bound to know that the hotel keeper was not keeping hotel for charity; the doors of the dining room were thrown open for pay, and if her ward walk

in there and eats, with her knowledge and consent, she must pay as such guardian.

The cases cited, Jones County v. Norton (Iowe).80 N. W.,200, and Newberry v. Creedon, 15 N. E., 157; Society v. Wolpert. 80 Ky., 86; and Albany v. McNamarra, 22 N. E., 931, differ, I think, from the case at bar in that it does not appear in either of those cases that the recipient or guardian consented to receive support which could not be legally given for pay.

In the case of Jones County v. Norton, the Iowa case, the provisions of the statute relative to insane persons are different from ours. Under chapter 2 title 11, of that State, the duty is imposed upon each county to care for all the insane persons having a legal residence in the county; they are cared for by the county by being sent to the State hospital, by being detained in the county poor house or jail if there is no poor house, or by special custodian. In all cases, the county pays the expense of care and support from taxes collected for that purpose, except when relatives or friends oblige themselves to take care of and provide for them without public charge; but we have seen that under our statute the insane person could not be cared for by compulsion as against the wishes of relatives. In Iowa they are cumpulsory; in that State the defendant, guardian of her husband, could not have prevented her husband being taken from her and put into the infirmary; so that she might well have consented to that which she could not prevent, and there can be nothing implied against her by such character of consent.

But under our statute it is entirely different; the very reverse of this is true; under the circumstances, he having an estate and being able to support himself, could not be put there except for pay.

It is true the Iowa statute further provides that the support given by the county is not intended to release the estates of the insane person; still, the difference is, as I have said, under the Iowa statute, the guardian is powerless to prevent the custody by the county; under our statute it is not so; our statute is peculiar in that the board of infirmary directors are required by the statute to care for in the county infirmary, at the expense of the county, only pauper insane, lunatics, etc. In neither of the other cases does the element of consent enter —a consent which is necessary in order to give a legal custody of a person or means who is insane; and in this repect, I think, that the cases are distinguished and different from the case at bar.

No such restriction is put upon the infirmary directors of the State of Iowa, who are bound by law to care for all insane persons, except the relatives or friends obligate themselves to take care of and provide for them without charge. Under our law, it is only those who are unable to pay; in other words, who are paupers; who may be taken care of without pay. Under the Iowa law all insane, those of means or those who are

paupers, must be taken care of in the first instance.

Now, this is a general demurrer to the petition. Whether this consent which is alleged makes an implied promise to pay, depends upon the circumstances surrounding this party, this defendant, as guardian under the law, as I have said, and under all the other facts there may be, so that whether she gave an implied contract to pay, whether there was a contract, implied contract, to pay, is a question that may be submitted to a jury to determine; in any view, however, this demurrer will have to be overruled.

H. P. Wiley and L. E. Dodd, attorneys for plaintiff.

Durban & McDermott, attorneys for defendant.