In re the Matter of the ESTATE OF James W. KEELER, (Deceased).

Judy Marie KEELER (now Francis), Appellant (Defendant Below),

v.

LaGRANGE COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee (Plaintiff Below).

No. 3–684A164.

Court of Appeals of Indiana, Third District.

April 22, 1985.

Kevin L. Likes, Grimm & Grimm, P.C., Auburn, for appellant.

J. Scott Vanderbeck, Richard K. Muntz, P.C., LaGrange, for appellee.

STATON, Presiding Judge.

Judy Marie Keeler (now Francis) appeals a trial court order awarding the LaGrange County of Public Welfare reimbursement for expenditures made on behalf of Judy while she was a minor ward of the Welfare Department after the death of both of her parents. The award was made from Judy's share of a wrongful death recovery received for the death of Judy's father. The court ordered the trustee of the funds to pay two-thirds of Judy's share to the Welfare Department in partial reimbursement for expenditures which exceeded Social Security payments received by the department on Judy's behalf.

Judy presents the following issues for review:

(1) Did the trial court err in entering a nunc pro tunc order to change the docket sheet to reflect the timely filing of the Welfare Department's claim?

(2) Did the trial court err in not dismissing the Welfare Department's claim as improperly filed against the closed estate of James Keeler?

(3) Did the trial court err as a matter of law in ordering reimbursement of the Welfare Department pursuant to IC 31–6–4–18(b)?

We affirm.

After the death of her father in an automobile accident, Judy was made a ward of the Welfare Department in 1980. An estate was opened and a wrongful death action was pursued to a successful settlement. After attorney fees and costs of administration were deducted, a fund of approximately $10,000.00 remained for distribution to Judy and her three younger sisters. The LaGrange Circuit Court ultimately approved the final accounting of the personal representative of the estate and ordered the remaining funds to be distributed to the four minor heirs in four equal portions to be held in trust by Farmers State Bank as guardian of the estate of the children.

When Judy became eighteen years of age, she requested that Farmers release her share of the funds held in trust. The bank petitioned the court for instructions regarding the demand and the court ordered a hearing. At the hearing on August 26, 1983 the court found, *sua sponte*, that the LaGrange County Department of Public Welfare claimed a "lien" for expenses advanced on behalf of Judy and granted the Department twenty-one days to file a claim for their lien.

The Welfare Department's claim was for $5,657.60. This claim represented the difference between the Social Security payments received for Judy's care and the actual expenditures made by the Welfare Department.

## I.

### Nunc Pro Tunc Entry

■ On February 21, 1984 the court held a hearing on the claim. Judy's attorney moved to strike the claim for being untimely filed. The file stamp on the original claim was illegible but the docket sheet entry indicated the claim was filed September 19, 1983—more than 21 days after August 26, 1983. Neither party presented any evidence other than the docket sheet entry regarding the actual time of filing. The court determined that the file stamp read September 14 and overruled the motion to strike, holding the claim timely filed. The docket sheet was ordered corrected to reflect September 14 as the true filing date. The Welfare Department, in its brief seems to concede that the claim was not filed within twenty-one (21) days as ordered, but argues that the trial court had the discretion to hear the belated claim

anyway. Since the record is somewhat unclear, we must defer to the trial court's stated reasons for finding the claim timely filed. Judy is appealing a negative judgment on this issue and we will not reverse if there is any evidence to sustain the court's finding. *Woodward Ins., Inc. v. White* (1982), Ind., 437 N.E.2d 59, 67. *Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92, 95. The court indicated that the file stamp was bad, but determined that September 14, 1983 was the date stamped on the claim. Moreover, the claim was signed and dated by the director of the LaGrange Department on September 14, 1983. There was, therefore, some evidence from which the trial court could have determined that the claim was timely filed and we cannot say that the trial court's action was clearly against the logic and effect of the facts and circumstances before it. This being the case, an order changing the docket sheet entry was proper. *Grider v. Scharf* (1947), 225 Ind. 251, 73 N.E.2d 75, 80 (the purpose of a nunc pro tunc entry is to make the record speak the truth.).

## II.

### Claim Against the Estate

Judy next argues that the trial court improperly permitted the Welfare Department to file a claim against her father's estate which had been closed more than a year earlier. She argues that since the estate was closed and the funds distributed there was nothing against which to file a claim. It is undisputed that this action proceeded under the cause number of James Keeler's estate. When Farmers State Bank filed its Guardian's Petition for Instructions, it filed under the estate caption and cause number. When Judy's attorney raised this issue at the hearing the following colloquy took place:

"LIKES: Your Honor, it looks like they filed a claim against the estate. I don't see any claim ever against ever filed against the guardianship [*sic*].

MUNTZ: (counsel for the bank) We don't always file our guardian's reports in the-the [*sic*] estate, Judge. As we-there wasn't ever a separate guardianship cause set up for us. So, I've always filed everything under P–80–27 because the J–80 something is a juvenile case and there's no G number anywhere.

COURT: This is the nature of a custom entry guardianship and if you put a G number you just raise the court costs. Well in any event, it got to this file."

There is some conflict regarding the formal appointment of Farmers as guardian and the record does not contain the proceedings in which the guardianship was established. The record does contain, however, evidence that all parties concerning considered and believed Farmers State Bank to be the duly appointed guardian of the children's estate. Farmers consented to the personal representative's petition to compromise claims for insurance benefits; Farmers appeared and objected to the terms of an annuity agreement (not in issue here) entered by the estate on behalf of the children; the court, in its findings on the final accounting of the estate, found that Farmers had been appointed guardian of the estate of the children.

Although the better practice may have been to proceed under a guardianship cause number,[1] we fail to see how Judy was prejudiced by the caption or cause number of the action. All of the parties proceeded on the understanding that the Welfare Department's claim was against the funds held in trust by the guardian of Judy's estate. The Keeler estate, the guardianship of the children and the guardianship of the children's estate were all supervised by the same court in proceedings related to or arising from the administration of James Keeler's estate. It would

---

1. We note here that when the fund in the estate is divided among the four children the estate of each child would be less than $3,500.00 which would bring them within the ambit of IC 29–1–18–50 which permits the court, without appointment of a guardian to authorize the deposit of the estate in a depository authorized to receive fiduciary funds, e.g., a bank, payable to the minor upon his attaining majority.

be an elevation of form over substance to find anything more than harmless error in the court's effort to promote judicial economy and efficiency. The test on review with respect to the impact of errors is whether it appears that a right result was reached. *Atwood v. Prairie Village, Inc.* (1980), Ind. App., 401 N.E.2d 97, 100. Where there is no showing that the alleged error resulted in prejudice to substantial rights of the party, there is no ground for reversal.

## III.

### Reimbursement Claim

We have found no cases in Indiana dealing with the Welfare Department's right to seek reimbursement from a child or its estate for the care and maintenance of the child under the guardianship of the Department. The trial court predicated its order on Ind.Code 31–6–4–18 (Burns Code Ed., 1980), a statute dealing with the financial responsibility for children adjudicated delinquent or children in need of services. A child in need of services is defined as one who before his eighteenth birthday is physically or mentally impaired or endangered "as a result of the inability, refusal, or neglect of his parent or custodian to supply the child with necessary food, clothing, shelter, medical care, education or supervision...." IC 31–6–4–3(a)(1). By virtue of being orphaned, Judy was apparently adjudicated a child in need of services after her father's death and made a ward of the Welfare Department. IC 31–6–4–18 provides that:

"(a) The cost of any services ordered by the juvenile court for any child or his parent, guardian, or custodian, and the cost of returning a child under IC 31–6–10 [31–6–10–1—31–6–10–4] shall be paid by the county, and the county council shall provide sufficient funds to meet the court's requirements.

(b) The parent or guardian of the estate of a child adjudicated a delinquent child or a child in need of services is financially responsible for any services ordered by the court unless:

(1) He is unable to pay for them;

(2) Payment would force an unreasonable hardship on the family; or

(3) Justice would not be served by ordering payment.

\*     \*     \*     \*     \*     \*

(d) At the dispositional hearing or any other hearing to consider modification of a dispositional decree, the juvenile court may determine the ability of a parent or guardian of the estate, to pay for services provided to himself or his child.

(e) The juvenile court shall require the parent or guardian of the estate to reimburse the county in a manner that will cause the least hardship."

■ Judy argues that this statute is designed to force errant parents to participate in rehabilitative type services for themselves or their neglected or delinquent children. While we may surmise that this may have been the motivating factor behind the legislative enactment of this provision, the statute is not limited in this manner. The statute merely permits the county to be reimbursed for any services ordered by the court for the child adjudged to be in need of services. When the court makes a CHINS adjudication and appoints the Welfare Department guardian of the person of the child, we must assume that such an order is tantamount to ordering the Department to provide such services as are necessary for the care and maintenance of the child. The statute permits the court to hold the guardian of the child's estate responsible to the county for payment of these services.

We conclude that there are other grounds as well for upholding the trial court's reimbursement order. It has long been the policy in Indiana that a minor may be liable for the cost of necessaries furnished him. *Hagerman v. Mutual Hospital Ins., Inc.* (1978), 175 Ind.App. 293, 371 N.E.2d 394, 395; *Scott County School District 1 v. Asher* (1975), 263 Ind. 47, 324 N.E.2d 496, 498; *Mitchell v. Campbell and Fetter Bank* (1964), 135 Ind.App. 523, 195 N.E.2d 489, 493. Furthermore, a minor is liable for necessaries procured by an agent

to the same extent as if procured by himself. *Fruchey v. Eagleson* (1896), 15 Ind. App. 88, 43 N.E. 146, 148. When a minor's estate is under guardianship, the estate may be liable for necessaries provided to the minor.

The guardianship provisions of the probate code, IC 29–1–18–33, (Burns Code Ed., 1984 Supp.) provides:

"(a) So far as is necessary for the purpose, except as provided in subsection (b) hereof, the income of the ward's estate shall be first applied to his care, maintenance and education. * * * If the income is not sufficient to care for, maintain and educate the ward . . . , the court may order the expenditure of such portion of the principal as it deems necessary from time to time for such purposes."

IC 29–1–18–32 permits the guardian of the estate or the person, department, bureau, agency or charitable organization having the care and custody of the ward to apply to the court for an order directing periodic payments from the child's estate to be applied to the care, maintenance and education of the ward. *See also Corbaley v. State* (1881), 81 Ind. 62; *State v. Clark* (1861), 16 Ind. 97, 102; *Turner v. Flagg* (1893), 6 Ind.App. 563, 33 N.E. 1104. In the *Turner* case the court said:

"... when a person has a legal and equitable claim against the estate of wards ... he may present his claim by proper complaint or petition, against such guardian, in the probate court having jurisdiction of the estate of the wards and of the person of the guardian, and secure an order of such court for the payment of such amount out of the trust estate as the court may, on the evidence, under the circumstances see fit ..." 33 N.E. at 1107.

The purpose of the proceeds of a wrongful death settlement is to recompense dependents in part for the loss of support they relied on from the decedent. *Bocek v. Inter-Insurance Exch. of Chicago Motor Club* (1977), 175 Ind.App. 69, 369 N.E.2d 1093, 1096. It does not seem unreasonable, then, that such funds should be available for the care and support furnished such dependents during their minority, whether furnished by the Welfare Department or by anyone else.

Other jurisdictions which have considered the question of reimbursement of the Welfare Department from a minor's estate have held that a minor's personal injury recovery was an asset of the minor's estate available for his care and maintenance or for determining his eligibility for benefits. *See Fitzpatrick v. Illinois Department of Public Aid* (1972), 52 Ill.2d 218, 287 N.E.2d 666; *Langs v. Harder* (1973), 165 Conn. 490, 338 A.2d 458. *But see Godden v. Department of Public Welfare* (1975), 193 Neb. 269, 226 N.W.2d 627 (where county court refused to release trust funds derived from wrongful death settlement for support of minor wards, such funds could not be considered in determining wards' eligibility for aid).

While there is some question in our mind whether the court, proceeding solely under the CHINS statute, met the requirements of advisement[2] and determination of financial responsibility,[3] it is clear that absent

---

2. "[IC] 31–6–4–13.5. Initial hearing on petition—Child in need of services.—(a) This section applies only to a child alleged to be a child in need of services.
    \*   \*   \*   \*   \*   \*
  (e) The juvenile court shall inform the parent or guardian of the estate that if the child is adjudicated a child in need of services:
  (1) He or the custodian of the child may be required to participate in a program of care, treatment, or rehabilitation for the child;
  (2) He may be held financially responsible for any services provided for himself or the child;"

3. "[IC] 31–6–4–16. Dispositional hearing and decree.—(a) The juvenile court shall hold a dispositional hearing to consider:
  (1) Alternatives for the care, treatment, or rehabilitation for the child;
  (2) The necessity, nature, and extent of the participation by a parent, guardian, or custodian in the program of care, treatment, or rehabilitation for the child; and
  (3) The financial responsibility of the parent or guardian of the estate for any services provided for himself or the child."

the CHINS financial responsibility provisions the court would still have the authority under the guardianship statutes and common law to hold the ward and his estate liable for care and support provided during minority. The statutes provide that a claim against the estate of a ward may be brought at any time before it is barred by the statute of limitations; the fact that the ward attains her majority does not bar the claim. IC 29–1–18–36(b) (Burns Code Ed., 1984 Supp.).

We affirm.

HOFFMAN, J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

A *nunc pro tunc* entry is appropriate to make the record speak the truth. It may not be used as a method to change a ruling actually made, *Harris v. Tomlinson* (1892), 130 Ind. 426, 30 N.E. 214, or to make timely that which was, in fact, untimely. *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, *cert. denied,* — U.S. ——, 104 S.Ct. 510, 78 L.Ed.2d 699. It is a familiar principle that such entries must find their basis in written memoranda contemporaneous with or preceding the date of the action described. *Stowers v. State* (1977), 266 Ind. 403, 363 N.E.2d 978.

It is commendable that the trial court recognized the interest of the county and its taxpayers and afforded the welfare department opportunity to present its claim. It did so by an order book entry on August 26, 1983, wherein it gave the welfare department twenty-one days within which to present its claim. No challenge to the propriety of that action has been made.

The welfare department filed a claim. The file stamp thereon is illegible as to the date of filing. The docket entry of the court states the claim was filed September 19, 1983, after expiration of the twenty-one days.

The court did hear testimony on Judy's financial status and apparently took that into account in

When the claim was challenged as untimely, and despite the fact that the welfare department produced no evidence whatever that the claim was filed before September 19, the court entered the following:

"Attorney Kevin Likes moves to strike the claim for reason it is untimely filed. The court being duly advised in the premises now overrules the Motion to Strike for being untimely filed for the reason the file stamp shows the claim being filed on September 19th, 1983 and now enters said entry of September 10, 1983 [sic] *nunc pro tunc* for September 14, 1983."

The court was without authority to do so. The judgment should be reversed.

awarding the Welfare Department only two-thirds of the fund (approximately $1,800.00.).