**BELTRAMI COUNTY,
Minnesota, Appellant,**

v.

**Karen Gloria GOODMAN, as Trustee
for the Heirs of Randi Jean
Goodman, Deceased, etc., Respondents.**

**Troy Adam GOODMAN, Respondent,**

v.

**Curt Damon KEMPER, et al.,
Defendants,**

**County of Beltrami, Appellant.**

**No. C8–87–349.**

Supreme Court of Minnesota.

Aug. 12, 1988.

Thomas J. Keyes, Alan R. Felix, Timothy Tingelstad, Peltrami County Attorney's Office, Bemidji, for appellant.

Stephen R. Young and Thomas D'Albani, Bemidji, for Troy Goodman.

George Manning, Bemidji, for Karen Goodman.

WAHL, Justice.

Beltrami County is appealing from an order of the Beltrami County District Court, Division I, (district court) denying its motion for distribution of $9813.75 from a minor's wrongful death settlement fund. The sum represented the costs of foster care provided by the county to the minor, Troy Adam Goodman. Beltrami County brought its motion pursuant to an order made by the Beltrami County District Court, Division II, (juvenile court), which determined that such settlement proceeds were available for reimbursement of the county's foster care expenses.[1]

---

**1.** At the time that this action was initiated, the Ninth Judicial District was organized along divisional lines. 9th J. Dist. R. 1.01 (1986). The Division I district court exercised original juris-

We had before us at the time Beltrami County appealed the order to the court of appeals, a related issue in the case of *In the Matter of the Welfare of K.S.*, 427 N.W.2d 653 (Minn. filed August 12, 1988). Therefore, we accepted the case for accelerated review and decision pursuant to Minn.R.Civ.App.P. 118, subd. 3 and Minn. Stat. § 480A.10, subd. 2(b)(ii)(1986). *In re K.S.* decides the issue of whether a minor's personal injury settlement fund is an available resource for purposes of a minor's eligibility for medical assistance under Minn.Stat. ch. 256B (1986) as well as for reimbursement to the county for cost of care under Minn.Stat. § 252.27 (1986). In this case we decide whether a minor's wrongful death settlement is available as income or resources under Minn.Stat. § 260.251, subd. 1(b) to reimburse a county for foster care provided to the minor.[2]

The facts are as follows: Troy Goodman, a minor, had not lived with his mother, Karen Goodman, or his half-sister, Randi Jean Goodman, since he was two years old. In May 1982 when he was six and one-half years old, he was adjudicated neglected and placed in the custody of the county by the Beltrami County juvenile court. About a month earlier, his sister has been similarly adjudged and placed in foster care. Prior to May, Troy had been living with his father, who had been sentenced to a state penitentiary a few weeks earlier.

Troy was returned to his mother's home under the supervision of Beltrami County Social Services in June 1985. Randi Jean, his sister, was returned to the mother's home in August, 1985. Two months later Randi Jean was killed when hit by a drunk driver. In June 1986, Troy was removed from his mother's care and placed in a group home because of continuing behavioral problems.

Attorney George Manning had been Troy's court-appointed guardian ad litem in the juvenile court. Upon Randi Jean's death, he represented the mother, individually and as trustee for Troy, in a wrongful death-civil damages (dram shop) suit brought in the district court.

The district court approved a $55,000 settlement of the action which resulted, after various payments, in a balance of about $34,000. The district court also appointed Stephen Young of Drahos and Young as guardian ad litem for Troy in the district court distribution proceedings. A determination on distribution of the settlement was delayed until September 29, 1985. Prior to this hearing, however, Beltrami County brought a motion in juvenile court for its order determining the income and resources attributable to the child and the mother, and available to the county for reimbursement. Hearing on the juvenile motion was set for October 8, 1986.

At the September 29th hearing in district court, Manning and Young presented a settlement proposal which would distribute $13,000 of the approximate $34,000 balance to Troy. On September 30, the district court issued an order distributing $13,000 to Troy to be placed in a trust account from which no funds could be removed without order of the district court.

At the October 8th hearing in the juvenile court, Beltrami County requested a determination of the obligations of both Troy and his mother for reimbursement of foster care costs. In an order dated December 30, 1986, the juvenile court directed

diction in all civil and criminal actions. The Division II district court, which was also the probate court, exercised the jurisdiction of a juvenile court as provided in Minn.Stat. ch. 260 (1986).

**2.** In their briefs, the parties raise additional issues concerning jurisdiction and res judicata which we need not reach in order to resolve the primary issue. Although decisions concerning disbursement of a minor's settlement fund should be left to the district court which has control over the fund, where this court has

determined that such fund is an available resource, the district court would not exercise its discretion in that regard. *See also, In re K.S.* It remains appropriate, however, for a juvenile court, as the authority which orders care, examination, or treatment pursuant to Minn.Stat. § 260.191 (1986), to initially order reimbursement under Minn.Stat. § 260.251, subd. 1(b) (1986). The actual release of the funds must then be made by the court which established the wrongful death settlement fund pursuant to Part I, Rule 2 of the District Court Code of Rules.

Young to make immediate application to the district court for disbursal of all or any part of Troy's $13,000 settlement fund for reimbursement of foster care costs. Further, the court ordered that should the county's expenses for Troy exceed his $13,000, the county might make further application to the juvenile court for additional orders providing for reimbursement from Karen Goodman's settlement proceeds. The juvenile court reasoned that "the clear intent of legislators and courts nationwide is to prevent individuals from continuing to drain limited social services resources when they have at their disposal significant sums generated by tort litigation."

A hearing was held on February 2, 1987 in the district court pursuant to a motion by Beltrami County for the disbursement of Troy's settlement funds. Young, brought a counter motion for an order awarding his fees and placing the balance of the money in trust for Troy. In an order dated February 4, 1987, the district court denied the county's motion, ordered the payment of attorney's fees and costs, and directed that any balance of Troy's fund should be placed in an interest-bearing account for the benefit of Troy. These monies were subject to the further order of the court, or to be disbursed to Troy upon his reaching the age of 18.

The single issue before us is whether a minor's wrongful death settlement fund is available as income or resources under Minn.Stat. § 260.251, subd. 1(b) to reimburse a county for foster care, provided to the minor. If the fund is available as resources, the order of the district court denying distribution of Troy Goodman's wrongful death settlement funds to reimburse Beltrami County for foster care must be reversed.

Minn.Stat. § 260.251, subd. 1(b) states: The court shall order the parents or custodian of a child, while the child is under the age of 18, to use the total income and resources attributable to the child for the

period of care, examination, or treatment, except for clothing and personal needs allowance as provided in section 256B.35, to reimburse the county for the cost of care, examination, or treatment. Income and resources attributable to the child include, but are not limited to, social security benefits, supplemental security income (SSI), veterans benefits, railroad retirement benefits and child support.

The statute does not limit in any way the type of resources attributable to the child from which a county may be reimbursed. The only exemption allowed is for a clothing and personal needs allowance. Nor is there any indication that the legislature intended to limit resources to "income stream" monies. The statutory examples might, in fact, be intended only as illustrations of income rather than resources. Furthermore, the legislature's use of the phrase "but not limited to" requires a broad interpretation. We hold, therefore, that a minor's wrongful death settlement fund is available as income or resources under Minn.Stat. § 260.251, subd. 1(b) to reimburse a county for foster care provided to the minor.

This decision is supported further by reviewing the purposes for which a wrongful death award is made.[3] It is clear that, for the most part, such an award is intended to compensate the survivors for the support of the decedent on which they relied. *Fussner v. Andert,* 261 Minn. 347, 113 N.W.2d 355 (Minn.1961). When that care and support is provided by the county rather than the decedent, it is not unreasonable to use the fund to reimburse the county. *See In re Estate of Keeler,* 476 N.E.2d 917, 921 (Ind.Ct.App.1985), aff'd., 479 N.E.2d 105 (Ind.Ct.App.1985).

Goodman urges the court to consider the public policy objectives underlying foster care. He argues that one of the fundamental objectives for foster care is to prepare a

**3.** In *K.S.,* we determined that the particular compensatory purpose of a minor's personal injury settlement fund does not affect its availability for medical assistance eligibility purposes. In that case both the Minnesota Rules and statutes provided guidance for what constituted an available asset in the medical assistance context, making it unnecessary to consider the type of damage for which the settlement was intended to compensate.

child for independent living, and that adequate financial resources are an essential aspect of a child's ability to survive independently.[4] Although we agree that even a modest fund could be a source of independence for Troy if he is no longer in foster care upon reaching the age of 18, it is for the legislature to explicitly identify any exemptions or exceptions to the statute.

We reverse the order of the district court and remand the case for further proceedings.

Reversed and remanded.

---

4. See generally, Hardin, *Preparing Adolescents in Foster Care for Independent Living: Some Issues in Law and Policy,* Summer, Children's Legal Rights Journal 2–7 (1987); Maloney, *Out of the Home onto the Street: Foster Children Discharged into Independent Living,* 14 Fordham Urban Law Journal 971 (1986).