**In re the Matter of C.K., a Child Alleged to be a Delinquent Child.**

**Thomas KAHLER, Appellant–Respondent,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 52A04–9709–JV–407.**

Court of Appeals of Indiana.

May 20, 1998.

---

Mark A. Ryan, Kathleen A. Young, Kokomo, for Appellant–Respondent.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

### STATEMENT OF THE CASE

Thomas Kahler ("Father") appeals the juvenile court's judgment ordering him to reimburse the Miami County Office of Family and Children (the "OFC") for the out-of-home placement costs of his minor son, C.K., a child adjudicated delinquent based upon his commission of an act which would be a crime

if committed by an adult: Theft, a class D felony. We reverse and remand with instructions.

## ISSUES

Father presents two issues for our review which we restate as:

1. Whether the juvenile court properly obtained jurisdiction in this cause.

2. Whether the trial court erred when it ordered Father to reimburse the OFC for the costs of out-of-home placement of C.K.

## FACTS

On December 11, 1994, 15–year–old C.K. stole $6,800.00 from his mother, Marcia Kahler–See. On January 20, 1995, the State filed a probable cause affidavit and a petition alleging C.K. to be a delinquent child. Thereafter, C.K. admitted the allegation of delinquency, and the court adjudicated C.K. a delinquent child for committing theft, an act which would be a crime if committed by an adult. On May 31, 1995, the juvenile court ordered C.K. to continue in out-of-home placement at the Cass County Children's Home.[1] Based upon its calculations using the Child Support Guidelines, the court ordered Father to begin reimbursing the OFC for the out-of-home placement at the rate of $100.00 per week. In August of 1995, C.K.'s placement was changed to Debra Corn Specialized Family Care. In April of 1996, the trial court ordered C.K. back to the Cass County Children's Home. Finally, in May of 1996, C.K.'s placement was again changed to the Independent Living Program at the White Institute where he was to remain until he reached the age of 18. Despite the changes in C.K.'s placement, the court directed Father to continue paying $100.00 per week toward the cost of placement for the duration of C.K.'s out-of-home placement.

The Miami County Probation Department subsequently petitioned the juvenile court for reimbursement from Father for the costs expended by the OFC for C.K.'s out-of-home placement because, as of June 1, 1997, C.K. would be terminated as a ward of the County. A reimbursement hearing was held on June 4, 1997. The OFC presented testimony that it had expended $59,116.00 for C.K.'s placement and that Father had already reimbursed the OFC through weekly payments for $6,840.00. Accordingly, the trial court entered judgment against Father and C.K.'s mother for the remaining amount of $52,276.00.

## DISCUSSION AND DECISION
### Issue One: Jurisdiction

■ Father first contends the juvenile court failed to follow the procedural steps necessary to obtain jurisdiction. Specifically, Father refers to the jurisdictional requirements that the prosecutor make a preliminary inquiry into the case prior to filing a delinquency petition and that the juvenile court examine such preliminary inquiry before approving the filing of the delinquency petition. *See* IND.CODE § 31–6–4–7.[2] Noncompliance with such procedural prerequisites precludes the assumption of jurisdiction over the juvenile. *Taylor v. State*, 438 N.E.2d 275, 277 (Ind.1982), *cert. denied*, 459 U.S. 1149, 103 S.Ct. 793, 74 L.Ed.2d 998 (1983).

The procedures followed in the instant case are similar to those approved in *Collins v. State*, 540 N.E.2d 85, 87 (Ind.Ct.App.1989), *trans. denied*. As in *Collins*, the court here had before it the affidavit of probable cause prior to approving the delinquency petition. Thus, the prosecutor had informally investigated the facts and circumstances surrounding the alleged theft prior to filing the petition. *See id.* In cases such as this where the child has committed an adult crime, inquiry by the court into further social history is unnecessary and not required by the statute defining preliminary inquiry. *Id.* In *Collins*, we reasoned that while an inquiry into the child's background, current status, and school performance may be necessary and desirable in delinquency cases arising out of

---

1. The record indicates that C.K. became a ward of the Cass County Children's Home on December 11, 1994, prior to the present delinquency adjudication. Record at 21.

2. This section has been repealed, amended and recodified at Indiana Code § 31–37–8–1 *et seq.*

sociological problems or when considering dependent or neglected children, that inquiry would add nothing to the decisional process in a cases where the protection of the public is at issue such as those involving the commission of acts which would constitute crimes if committed by adults. *Id.* (citing *Murphy v. State*, 408 N.E.2d 1311, 1314 (Ind.Ct.App. 1980) and *Harris v. State*, 398 N.E.2d 1346, 1347 (Ind.Ct.App.1980)).

Because C.K. was alleged to be delinquent based upon an act which would constitute a crime if committed by an adult, no further inquiry in addition to that contained in the probable cause affidavit was necessary. The juvenile court properly obtained jurisdiction over this cause.

### Issue Two: Reimbursement

Father next contends the trial court erred when it entered judgment against him and C.K.'s mother in the amount of $52,276.00[3] for the costs of the out-of-home placement of C.K. Although for reasons other than those argued by Father, we agree and remand to the trial court on this issue.

The relevant statute in effect at the time of the May 31, 1995, dispositional hearing provided in part as follows:

(a) This section applies to a financial burden sustained by a county as the result of costs paid by the county under subsection (b), including costs resulting from the institutional placement of a child adjudicated a delinquent child or a child in need of services.

(b) The cost of any services ordered by the juvenile court for any child, or the child's parent, guardian, or custodian, and the cost of returning a child under I.C 31–6–10 shall be:

(1) paid by the county; and

(2) reimbursed to the county by the child's parent or the guardian of the estate of a child as provided under this section.

The county council shall provide sufficient funds to meet the court's requirements.

(c) A parent or guardian of the estate of a child adjudicated a delinquent child or a child in need of services is financially responsible for any services ordered by the court under subsection (e). Each parent of a child alleged to be a child in need of services or alleged to be a delinquent child shall, before a dispositional hearing, furnish the court with an accurately completed and current child support obligation worksheet on the same form that is prescribed by the Indiana supreme court for child support orders.

\* \* \* \* \* \*

(e) At the dispositional hearing or any other hearing to consider modification of a dispositional decree, the juvenile court shall order the child's parents or the guardian of the child's estate to pay for services provided to the child or the parent or guardian unless the court finds:

(1) that the parent or guardian is unable to pay; or

(2) that justice would not be served by ordering payment from the parent or guardian.

(f) Whenever the court orders institutional placement of the child, the court shall refer to the child support guidelines adopted by the Indiana supreme court to determine the financial contribution required from each parent of the child or guardian of the child's estate. The court shall order support paid by each of the child's parents or the guardian of the child's estate, except as provided under subsection (e).

IND.CODE § 31–6–4–18 (as amended by P.L. 270–1995).[4]

This court has considered the welfare department's right to seek reimbursement for the care and maintenance of a child under a prior but similar version of Indiana Code

---

**3.** We note that a subsequent order of the court refers to the judgment amount as $52,716.00. On remand, the court is directed to clarify the total costs expended by the OFC for the out-of-home placement of C.K.

**4.** This section has been repealed and amended multiple times, and is now recodified as Indiana Code § 31–40–1 *et seq.*

§ 31–6–4–18 in *In re Estate of Keeler*, 476 N.E.2d 917, 920 (Ind.Ct.App.1985). In *Keeler*, we stated that when the juvenile court makes a CHINS adjudication and appoints the welfare department guardian of the person or child, such an order is tantamount to ordering the department to provide such services as are necessary for the care and maintenance of the child. *Id.* The legislature has in turn permitted the court to hold the parent or guardian of the child's estate responsible to the county for payment of these services. *See id.* While *Estate of Keeler* addresses reimbursement for a child adjudicated CHINS, the OFC's statutory right to seek reimbursement is also provided for in the context of a child adjudicated a delinquent child. *See Carnahan v. State*, 558 N.E.2d 845, 847 (Ind.Ct.App.1990) (Indiana Code § 31–6–4–18 gives authority for a county to be reimbursed for services rendered to a child who has been adjudicated delinquent).

■ We disagree with Father that in cases where the court orders institutional placement of the child such as here, the OFC may only recover the amount determined by the court to be a reasonable financial contribution or weekly support amount required by each parent. Essentially, Father argues that once the child has reached majority and is released from placement, the parents cannot be held responsible for the costs of placement and services that exceed the amount contributed through a weekly support order. Our review of the case law and the statutory language that a parent "is financially responsible for any services ordered by the court" leads us to the conclusion that the OFC clearly has the right to seek reimbursement by the child's parents for the costs of **any services** provided to the delinquent child, including all costs resulting from the institutional placement of the child. *See* IND.CODE § 31–6–4–18(a).

■ However, the OFC's right to seek reimbursement and the court's ability to order reimbursement is not unlimited. A juvenile court's order regarding payment of services must abide by the statute's mandates. *In re E.I.*, 653 N.E.2d 503, 511 (Ind. Ct.App.1995). Indiana Code § 31–6–4–18(e) specifically states that the juvenile court **shall** order the child's parents to pay for services provided **unless** the court finds (1) that the parent is unable to pay; or (2) that justice would not be served by ordering payment from the parent. IND.CODE § 31–6–4–18(e). Here, there is nothing in the record to indicate that the trial court considered either of C.K.'s parent's ability to pay $52,276.00 or whether justice would be served by ordering his parents to reimburse the OFC for the costs of C.K.'s placement which exceed what Father has paid through weekly support. While the court clearly considered Father's financial situation when ordering him to contribute $100.00 per week[5] toward the support of C.K. during his out-of-home placement[6], such finding is inadequate to constitute consideration of Father's ability to pay the entire reimbursement amount when reduced to judgment. Sound public policy dictates that the court consider the factors laid out in section 18(e) and state its findings thereon before placing such a large financial burden on a delinquent child's parents.

Accordingly, we reverse and remand to the trial court for a consideration of both Father's and C.K.'s mother's ability to pay the entire reimbursement amount sought by the OFC, and a consideration of whether justice would be served by ordering the parents, or either of them, to pay the entire reimbursement amount. Clearly, as admitted by Father, Father is liable for the amount of weekly support he was in arrears at the time of the reimbursement hearing, approximately $3,560.00. Upon remand, the trial court should hear evidence on each parent's ability to pay the remaining costs of services provid-

---

5. The trial court found C.K.'s mother to be financially unable to make a weekly support contribution.

6. Father testified that his gross income was between $1,300.00 and $1,400.00 per week. The

court indicated that although the Child Support Guidelines would normally require Father to contribute a weekly support amount of $198.00, the court instead ordered Father to only contribute $100.00 per week during the approximate 2 years that C.K. lived in out-of-home placement.

ed to C.K. by the OFC.[7]

Reversed and remanded with instructions.

HOFFMAN and SHARPNACK, JJ., concur.

---

**7.** Although C.K.'s mother is not a party to this appeal, because the trial court entered judgment against both parents "jointly and individually," we necessarily reverse the trial court's judgment as to both parents and remand for proper findings with regard to both parents.