ESTATE OF Robert "Bobby" Lee HELMS, Deceased, and Robert Lee Helms, II, and Angel Faith Helms McCartney, Appellants–Defendants,

v.

Tyeanne HELMS–HAWKINS, Appellee–Plaintiff.

No. 55A01–0301–CV–23.

Court of Appeals of Indiana.

March 23, 2004.

Rehearing Denied May 28, 2004.

---

Mark E. Need, Bose McKinney & Evans, LLP, Indianapolis, IN, Attorney for Appellants.

Vincent S. Taylor, Vince Taylor's Law Office, Bloomington, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Robert "Bobby" Helms (Bobby) was a recording artist most noted for three hit songs that topped the pop and country music charts in the late 1950s. Those songs were *Fraulein, My Special Angel,* and *Jingle Bell Rock.* Bobby died in Morgan County, Indiana on June 19, 1997. After his death, the royalties to those songs comprised a significant part of his estate. Several probate actions ensued involving either directly or indirectly the rights to those royalties. This appeal challenges a ruling in one of those actions. Appellants consist of Bobby's estate (the Estate) and two of his children, Robert Helms II (Robert) and Angel Faith Helms McCartney (Angel). The appellee is another of Bobby's children, Tyeanne Helms–Hawkins (Tyeanne). The ruling at issue is the granting of Tyeanne's motion to set aside an Agreed Judgment that purportedly settled a dispute over royalties between the Estate on one side and Robert and Angel on the other. Appellants contend that the trial court erred in setting aside the Agreed Judgment, presenting the following consolidated, restated issues for review:

1. Did Tyeanne have standing to challenge the Agreed Judgment?

2. Did the trial court err in granting Tyeanne's motion to set aside the Agreed Judgment?

We affirm.

Essentially, this controversy centers upon procedural questions. Therefore, in addition to a few additional facts, we will set out a detailed account of the procedural history of this case. When Bobby died, he left a will in which he divided his estate among three beneficiaries: Rita Bridges (Rita),[1] Robert, and Angel. Under the will, Rita received (1) all of Bobby's real property, (2) eighty percent of the "rights and interest in royalties from MCA"[2], *Appendix of Appellants* at 47, one-third of Bobby's rights and interest in "three ... TV master tapes and two ... video tapes which are owned one-half ... by me and one-half ... by John Klineman", *id.,* and (3) all of Bobby's remaining assets not otherwise specifically disposed of in the will. Robert received (1) Bobby's one-half interest in the rights and royalties to Bobby's Jingle Bell Rock album (of which Robert already owned the other one-half interest), (2) ten percent of the rights and interest in royalties from MCA, and (3) one-third of Bobby's rights and interest in the aforementioned TV master tapes and videotapes that were owned jointly by Bobby and Klineman. Angel received (1) ten percent of the rights and interest in royalties from MCA, and (3) one-third of Bobby's rights and interest in the aforementioned TV master tapes and videotapes that were owned jointly by Bobby and Klineman.

The probate court opened Bobby's estate sometime after his death in June 1997. Three separate legal actions were thereafter initiated. We will refer to the first as the General Estate Proceedings. Those

---

1. The will, which was executed on October 1, 1996, not only identified Rita Bridges as a beneficiary under the will, but also designated her as executrix of Bobby's estate. We note that in the ensuing legal actions, the executrix of the Estate was identified as "Rita Helms". It may be inferred that "Rita Bridges" and "Rita Helms" are the same person.

2. "MCA" evidently refers to a recording label that periodically paid royalties to Bobby.

proceedings included the probating of the will and the opening of the estate.

On July 25, 1997, Robert and Angel filed a Complaint to Contest Will, thereby initiating the second action, which we will refer to as the Will Contest Action. In that complaint, Robert and Angel claimed that the October 1 will was invalid for reasons that are not relevant in the instant case. On December 22, 1997, four of Bobby's other children filed a Motion to Intervene in the Will Contest Action filed by Robert and Angel. Those children were Bobby Lee Helms, Randy Scott Helms, Debbie K. Axsom, and Tyeanne. Their motion to intervene was granted. On January 21, 1998, Randy Helms and Tyeanne filed a Motion for Joinder requesting to join in Robert and Angel's Will Contest Action. That motion was granted five days later.

We will refer to the third and final action as the Royalties Action. The instant case arises from a ruling in that proceeding. The Royalties Action was a consolidation of three separate claims against the Estate for royalties that were paid to Bobby periodically by MCA. Those claims involved: (1) a May 24, 1983 assignment by Bobby to John Fewell, who subsequently assigned those rights to Robert and Angel, (2) an August 17, 1988 assignment by Bobby to H and H Promotions, Inc., which is now known as Special Angel, Inc., and (3) a September 27, 1995 assignment by Bobby to Kleiman.[3] Following a September 2, 1999 hearing on the consolidated claims, the court issued a March 17, 2000 judgment, accompanied by findings and conclusions. In that judgment, the court acknowledged that Kleiman with-

drew his claim against the Estate. The court ruled that Bobby did assign his rights to Fewell, who did subsequently assign his rights to Robert and Angel. The court noted, however, that there was no evidence that royalties were ever paid to Fewell pursuant to the assignment. The court concluded that Bobby's assignment to Fewell lapsed because Fewell failed to enforce it. Therefore, Fewell possessed no rights that could later be assigned to Robert and Angel. Finally, the court also denied Special Angel, Inc.'s claim. The court concluded that Special Angel, Inc., like Fewell, never enforced its assignment and therefore it had lapsed.

On April 18, 2000, Robert and Angel filed a motion to correct errors, challenging the March 17 ruling. Special Angel eventually filed a similar motion. The court denied both motions to correct errors and the non-prevailing parties initiated appeals on September 7, 2000 by filing a praecipe for the record of proceedings. At a pre-appeal conference before this court, the parties indicated they were close to reaching a settlement and requested an extension of time to file the record. They indicated that they would inform the court if and when a settlement had been reached by forwarding to this court a copy of the settlement agreement and a stipulation of dismissal. That evidently occurred, because on April 20, 2001, the parties filed an Agreed Judgment Regarding Claim (Agreed Judgment), which provided, in pertinent as follows:

1. The parties have settled the disputed issues currently on appeal from a

---

3. It is not clear from the record whether this "Kleiman", identified as such in the trial court's Findings of Fact and Conclusions of Law, is the same person as the one identified by Bobby Helms in his will as "John Klineman." *Appendix of Appellants* at 47. Therefore, we will designate that person, or those

persons, as the parties and court have previously done. Also, the original claim indicated that the assignment was to both Kleiman and Richard Hocker. The record does not reflect active participation by Hocker in the proceedings below.

prior Order of this Court. As part of the settlement, Rita Helms individually and as personal representative of the estate concedes the issues on appeal, thereby acknowledging the validity and enforceability of a certain assignment for MCA Royalties executed by Bobby Helms during his lifetime to John Fewell, and a subsequent such assignment of that right by John Fewell to Robert Helms, II and Angel McCartney.

2. In light of the validity and enforceability of that assignment, the royalties currently being held in the estate account, such account located with Key Bank, were not and are not assets of the estate, and therefore, are and have been non-probate assets.

3. By virtue of the royalties being non-probate assets, it is hereby stipulated and agreed that such, at this time, should be withdrawn and released from the estate account.

*Appendix of Appellants* at 24–25. The Agreed Judgment was entered by court order on April 20, 2001. On May 18, 2001, Tyeanne filed an Objection to Agreed Judgment, which stated, "Reference the attached Agreed Judgment Regarding Claims and Order; Rita Helms, Robert Helms II, Angel Helms McCartney and John Fewell entered into a sham agreement which deprives Bobby Helms, Randy Helms, Debbie Axsom, and [Tyeanne] of their causes of actions [sic] and entitlements in the estate of their father." *Appendix of Appellants* at 26. On March 26, 2002, Appellants filed a response to Tyeanne's Objection to Agreed Judgment and a Motion to Reconsider Order Granting Intervention. On December 13, 2002, the trial court granted Tyeanne's motion and set aside the Agreed Judgment. Appellants appeal that order.

1.

■ Appellants contend that Tyeanne's motion to set aside the Agreed Judgment must be denied because her motion to join the will contest action was not filed until after the statutory five-month limitations period had expired. *See* Ind.Code Ann. § 29–1–7–17 (West, PREMISE through 2003 1st Regular Sess.). Therefore, Appellants argue, she is not a valid party in the action in the first place and has no standing to challenge the Agreed Judgment.

■ Our research indicates that our appellate courts have not addressed this question recently, but it appears that, years ago, it was resolved adverse to Appellants' position. In *State ex rel. Matheny v. Probate Court of Marion County,* 239 Ind. 518, 159 N.E.2d 128 (1959), our supreme court addressed a similar, though not precisely the same, question, i.e., "Can an order of court and the filing of an amended complaint to contest a will after expiration of the statutory time for filing such contest, bring an omitted necessary party defendant (a beneficiary under the will) into court so as to confer jurisdiction of the person and subject matter on the court?" *Id.* at 130. In *Matheny,* the court's ruling was based in large part upon a passage from a nineteenth-century Indiana case addressing essentially the same issue as is before us in the instant case. We reproduce that passage here:

Where a petition of [a will] contest is filed within the statutory period of limitation although only part of the persons interested are made parties thereto, the right of action is saved as to all who are ultimately made parties, notwithstanding some of them are not brought into the case until after the period of limitation has expired. If any person interested appears, and in good faith files his petition for a contest, the statutes entitle

him to a trial, and the verdict of a jury, touching the validity of the will, and that verdict will be binding upon all parties who may be before the court as such, at the time of its rendition. The interest of the parties is joint and inseparable. Substantially this is a proceeding *in rem*, and the court can not take jurisdiction of the subject-matter by fractions. The will is indivisible, and the verdict of the jury either establishes it as a whole, or wholly sets it aside. To save the right of action therefore to one is necessarily to save it to all. The case belongs to that class of actions where the law is compelled either to hold the rights of all parties in interest to be saved, or all to be barred. And it seems now to be quite well settled law, that the preference will in such cases be given to the right of action, and not to the right of limitation. The right to sue is a favored right and is guaranteed by constitutional provision while the right of limitation generally meets with more or less disfavor.

*Floyd v. Floyd,* 90 Ind. 130, 133–34 (1883) (quoting *Bradford v. Andrews,* 20 Ohio St. 208, 1870 WL 23 (5 Am. R. 645)). Although the cases relied upon are not of recent vintage, they represent our supreme court's most recent determinations on the questions, and we are not free to disregard or alter them. Our interpretation of the foregoing authority is that an interested party may join a will contest action after the time for filing a will contest has lapsed, so long as the action being joined was initiated before the expiration of the statutory period. Therefore, Tyeanne's status as a plaintiff in the Will Contest Action is not defeated merely by virtue of the fact that her motion to intervene was filed more than five months after the will was probated.

■ We must now determine whether Tyeanne did indeed ever validly join in the Will Contest Action. Robert and Angel claim that she did not. Their arguments in this regard center upon two pleadings, at least one of which must serve as the basis for Tyeanne's status as a party plaintiff in the Will Contest Action, or her arguments must fail.

The first pleading was a somewhat enigmatic filing of December 4, 1997, entitled "Estate Claim". *Appendix of Appellants* at 33. Bearing the cause number of the General Estate Action, the document is in the form of an affidavit, and states the claim that the will probated by Rita was not and could not have been executed by Bobby. Although the top of the document lists the names of Helms's children (including Tyeanne) other than Robert and Angel, it is signed at the bottom only by Bobby Lee Helms. Notwithstanding the cause number, Appellants contend that Tyeanne's fate in the Will Contest Action rests entirely upon that document and the action it represents. Eventually, the trial court granted the Estate's motion to dismiss the Estate Claim. According to Appellants, that signaled an unsuccessful end to Tyeanne's attempt to contest the will. Tyeanne's counsel pointed out, however, that Tyeanne was not involved in the preparation or filing of that document because she did not sign the document. Thus, she argues, it cannot be attributed to her. We agree. The mere fact that her name is typed at the top of the page does not signify her involvement. As a result, her status as a plaintiff in the Will Contest Action is not rooted in the Estate Claim. That leaves only the December 22, 1997 Motion to Intervene and the January 21, 1998 Motion for Joinder. We will take those pleadings in the order in which they were filed.

Appellants contend that Tyeanne did not join in the Will Contest Action by way of the Motion to Intervene because the cause number on the Motion to Intervene was that of the General Estate Action, and not the Will Contest Action. We wish to make it clear at the outset that, in submitting a pleading that sought to join the Will Contest Action, it would have been preferable for Tyeanne to do so under the Will Contest Action cause number. Nevertheless, we cannot see how Appellants were prejudiced by the caption or cause number of Tyeanne's Motion to Intervene. *See In re Estate of Keeler*, 476 N.E.2d 917, 919–20 (Ind.Ct.App.1985), *adhered to on reh'g*, 479 N.E.2d 105. The Will Contest Action and the Royalties Action were clearly ancillary to the General Estate Proceedings. This (i.e., that it was in the nature of a will contest) surely came as no surprise to Appellants, inasmuch as all three actions were discussed at the hearings held on those matters. Moreover, Appellants cannot plausibly argue that the true essence of the Motion to Intervene as a Will Contest pleading was unknown to them because they were misled by the General Estate Proceedings cause number. By way of illustration, we reproduce the following excerpt from that pleading:

1. The aforementioned are the natural born children of the decedent, Bobby Lee Helms.

2. On or about June 26, 1997, two (2) other children of Bobby Helms, Angel Faith Helms McCartney and Robert Lee Helms, II, filed their Objection to Probate of Will.

3. That the above named children of Bobby Helms request that the Court allow them to intervene in this cause to protect their rights and interests by being permitted to intervene generally and be included on the official distribution list and being designated to receive notices of pleadings and and [sic] papers filed in this case.

4. That the above named children of Bobby Helms further request that the Court allow them to be joined as parties-plaintiff with Robert Lee Helms and Angel Faith Helms McCartney on their Objection to Probate of Will.

5. The herein four (4) named children of Bobby Helms have similar interests with the Plaintiffs, Robert Lee Helms, II and Angel Faith Helms McCartney in that if the Will which was admitted to probate in this cause is set aside, they will stand to inherit the estate of Bobby Helms pursuant to the laws of the State of Indiana, regarding intestate succession.

WHEREFORE, the children of Bobby Helms, pray that they be permitted to intervene generally and/or that they be joined as parties-plaintiff to the Objection to Probate of Will filed on June 26, 1997 and that they be included through their legal counsel, Jawn Bauer, and he be designated to receive notice of any matters arising in this case including pleadings and papers filed.

*Appendix of Appellants* at 52. The intended purpose of the foregoing document could not be clearer. Through it, Tyeanne (and the other three) sought to join the Will Context Action.

To summarize the issues covered thus far on this point, it was clear that the rights to the property in Bobby's estate hinged on the outcome of the Will Contest Action. That was especially so in the case of Tyeanne, Bobby Lee, Randy, and Debbie, as they were not named as beneficiaries in the contested will. The Will Contest Action, along with the Royalties Action, was supervised by the same court in proceedings related to or arising from the administration of Bobby's estate. It would be an elevation of form over sub-

stance to find other than, at most, harmless error in the court's effort to promote judicial economy and efficiency by considering the mis-captioned Motion to Intervene as in fact relating to the Will Contest Action. *See id.* Where, as here, there is no showing that the alleged error resulted in prejudice to substantial rights of the party, there is no ground for reversal. *Id.*

Finally, even were we to ignore the Motion to Intervene because of the cause number reflected on its caption, Tyeanne's January 21, 1998 Motion To For [sic] Joinder removed all doubt about Tyeanne's desire to join in the Will Contest Action. In that pleading, which bore the cause number of the Will Contest Action, Tyeanne stated, in pertinent part:

1. [Tyeanne and Randy] are the natural born children of the decedent, Robert Lee Holmes.

2. Two other children of Bobby Helms, Angel Faith Helms McCartney and Robert Lee Helms, II have filed with this Court their Contest of the Will which has been admitted to Probate.

3. That the above named children of Robert Lee Helms request that the Court join them as parties-plaintiff in that Will Contest to protect their rights and interests.

4. The herein named two children of Robert Lee Helms have similar interests with the Plaintiffs object Lee Helms, II and Angel Faith Helms McCartney in that if the Will which was admitted to Probate in this cause is set aside, they will stand to inherit a respective share of the estate of Robert Lee Helms, pursuant to the laws of the State of Indiana regarding intestate succession.

*Appendix of Appellants* at 58. As we have indicated previously, the timing of Tyeanne's motion to join in the Will Contest Action was not an issue so long as she joined an action that had been timely filed by someone else. Tyeanne accomplished that, if not in her motion to intervene, then in her motion for joinder.

2.

We have determined that Tyeanne was validly joined as a party in the Will Contest Action. We must now determine whether, as such, she was entitled to set aside the Agreed Judgment. Appellants claim that even assuming Tyeanne was a valid party in the Will Contest Action, she was not entitled to a ruling setting aside the Agreed Judgment because they were not obligated to consult with her before they reached an agreement with the Estate. That assertion rests primarily upon two claims. First, Appellants assert generally that "there simply is no requirement in the law that a plaintiff must seek the input, approval, or consent of his co-plaintiff prior to settling a lawsuit as to himself." *Brief of Appellants* at 15. Second, Appellants contend, "contrary to the trial court's finding, the Agreed Judgment did *not* settle (or even refer to) the Will Contest Matter, but only the Royalties Probate Claim Matter, to which [Tyeanne] was not a party." *Id.* (emphasis in original). We will address these arguments in turn.

■ Appellants first argue that they were not required to seek Tyeanne's consent in order to settle the dispute between the Estate and Robert and Angel. In support of this argument, Appellants cite several decisions of this court and the Indiana Supreme Court, each of which affirmed negotiated settlement agreements. *See Mendenhall v. Skinner & Broadbent Co., Inc.,* 728 N.E.2d 140 (Ind.2000); *Hefty v. All Other Members Certified Settlement Class,* 680 N.E.2d 843 (Ind.1997); *Manns v. State Dep't of Highways,* 541 N.E.2d

929 (Ind.1989).[4] Significantly, none of those are probate cases. This is significant because the Probate Code controls all probate proceedings in Indiana. *Abbott v. Dep't of Pub. Welfare,* 243 Ind. 596, 189 N.E.2d 417 (1963). Thus, if the Probate Code speaks on a specific topic in that area, that provision prevails over general legal principles. *Cf. Ford v. State,* 650 N.E.2d 737 (Ind.Ct.App.1995) (specific provisions of a statute prevail over general statutory provisions).

The Probate Code contains provisions that cover compromises in probate proceedings. Ind.Code Ann. § 29–1–9–1 (West 1999) provides that the compromise of any will contest concerning the admission to probate of a will, the validity or effect of a will, or the rights or interests in the decedent's estate of any person, whether claiming under a will or as an heir, must be made in accordance with the provisions of the Probate Code, and will be lawful and binding upon all the parties thereto. Further, I.C. § 29–1–9–2(a) (West 1999) provides that the compromise's terms "shall be set forth in an agreement in writing *which shall be executed by all competent persons having interests or claims which will or may be affected by the compromise* [.]" (Emphasis supplied.) Did Tyeanne have an interest that was or might be affected by the Agreed Judgment? To answer that question, we must examine the Agreed Judgment more closely.

Our examination of the Agreed Judgment's scope requires us to consider the second of Appellants' arguments, i.e., that it did not settle the Will Contest Action. Tyeanne's counsel not only implied, but directly stated that the Will Contest Ac-

tion would be dismissed as a part of the Agreed Judgment: "There is absolutely no potential whatsoever that [Tyeanne] would recover under her father's estate because now of course the will contest as a part of this agreement has been dismissed." *Transcript of Proceedings* at 8. In her Supplemental Argument and Authority submitted to the trial court after the hearing on her motion, but before a decision was made, Tyeanne's attorney wrote, "In addition, Tyeanne was not consulted about the agreement which ultimately removed the proceeds of the MCA royalties from the estate *and dismissed the will contest.*" *Appendix of Appellants* at 67 (emphasis supplied).

The perception that the Agreed Judgment signals the end of the Will Contest Action is further reinforced in the record by the order granting Tyeanne's motion to set aside the Agreed Judgment, to wit: "The Court further finds that [Appellants] and Henry Fewell failed to consult Tyeanne concerning the proposed *Agreed Entry* in cause number 55D01–9711–CP–499 *which would resolve the issue of the will contest.*" *Id.* at 11. The Estate's attorney did not deny those representations either in responding to Tyeanne's motion to set aside the agreed judgment or at the hearing on the motion. Indeed, it would seem logical that conceding the royalty rights to Robert and Angel, especially after the court had already ruled in Rita's favor on that question, would be only one side of a two-sided agreement. The other side of that deal might well be Robert's and Angel's promise to dismiss the Will Contest Action. In the end, however, such a conclusion could be based only on conjecture, because the Agreed Judgment itself

---

**4.** Appellants also cite one case, *R.L. McCoy, Inc. v. Jack,* 752 N.E.2d 67 (Ind.Ct.App.2001), in which transfer was granted and the opinion vacated. *See* 772 N.E.2d 987 (Ind.2002). Of course, when such occurs, the court of appeals opinion is held for naught and has no precedential value. *See* Ind. Appellate Rule 58(A); *Wontorski v. Williamsburg Mobile Homes, Inc.,* 794 N.E.2d 433 (Ind.2003).

contains no such provision, as reflected in the following:

Comes now Rita Helms as personal representative of the estate of Robert (Bobby) Helms, in person and by her counsel, Richard D. Bray, and Robert Helms, II and Angel (Helms) McCartney, in person and by their attorneys Dale S. Coffey, and Mark E. Need, enter into this Agreed Judgment Regarding Claim, and in so doing agree and respectfully show the Court as follows:

1. The parties have settled the disputed issues currently on appeal from a prior Order of this Court. As part of the settlement, Rita Helms individually and as personal representative of the estate concedes the issues on appeal, thereby acknowledging the validity and enforceability of a certain assignment for MCA Royalties executed by Bobby Helms during his lifetime to John Fewell, and a subsequent such assignment of that right by John Fewell to Robert Helms, II and Angel McCartney.

2. In light of the validity and enforceability of that assignment, the royalties currently being held in the estate account, such account located with Key Bank, were not and are not assets of the estate, and therefore, are and have been non-probate assets.

3. By virtue of the royalties being non-probate assets, it is hereby stipulated and agreed that such, at this time, should be withdrawn and released from the estate account.

*Appendix of Appellants* at 24–25. The foregoing comprises the entirety of the agreement. Notably, there is no mention of Robert and Angel dropping the Will Contest Action. If they have indeed consented to do so, it is not reflected in, nor is it compelled by, the Agreed Judgment. As a result, Tyeanne's interest with respect to the viability of the will contest is unaffected by the agreement because even if Robert and Angel dropped out of the Will Contest Action, it would remain open as to Tyeanne if she choose to prosecute it. This is not to say, however, that Tyeanne's interests are unaffected by the purported Agreed Judgment.

The only matter addressed in the Agreed Judgment was the ownership of the royalty rights to Bobby's erstwhile hit songs. The court ruled that Bobby's assignment of those rights many years ago was ultimately ineffective as to Robert and Angel because no assignee had ever exercised them. Thus, in effect, the assignments failed and Bobby retained ownership. He devised a significant portion of those rights to Rita in his will. In the Agreed Judgment, Rita purported to concede ownership of those royalties to Robert and Angel. If the trial court's original ruling on those rights is reinstated and the will is ultimately determined to be invalid, then Bobby's property, including rights to collect his royalties, would pass by the laws of intestate succession. As an heir-at-law, Tyeanne would share in that distribution. In that scenario, Tyeanne would clearly be a person having an interest or claim that will be affected by the compromise. *See* I.C. § 29–1–9–2(a). Therefore, a compromise conceding those rights to Robert and Angel in the probate proceedings would require Tyeanne's approval. Because the Agreed Judgment did not contain such, the trial court did not err in granting Tyeanne's motion to set it aside.

Judgment affirmed.

RILEY, J., and SULLIVAN, J., concur.